## Woods v. Crump et al.

May 17, 1940.

W. J. Baxter, Judge.

David Allen for appellant.

J. P. Chenault and Clay Shackelford for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On November 21, 1893, John J. Todd and wife conveyed to their daughter, Lenah Linville, formerly Lenah Murray, nee Lenah Todd, a farm situated in Madison County, Kentucky, containing about 65 acres, she being vested with the title "during her natural life, then to her heirs." The consideration expressed in the deed was "natural love and affection and the further consideration of a mutual division of certain lands and monies among *the heirs and children* of the parties of the *first* part (grantors) and deeds made in accordance with said division have given, granted, bargained and sold and by these presents do hereby convey," &c. (Our emphasis.)

At the time of the conveyance the daughter was living with her second husband, James T. Linville. Neither at the time of this conveyance, nor at any time preceding her death, did the life tenant in the deed have issue or descendants, and she died in July, 1938, leaving only collateral heirs who were related by blood.

On February 13, 1933—nearly forty years after the execution of the deed and more than five years before the death of the life tenant, the Madison circuit court—pursuant to proceedings inaugurated therein by the life tenant and her husband as authorized by Section 2071 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes—entered a judgment whereby she and her husband adopted the appellant and a defendant below, Joseph D. Woods (then 32 years of age), as their heir, with the right of inheriting *from them* "the same as if he had been the issue of their marriage." Following the death of the life tenant, and on February 17, 1939, some of her blood collateral heirs filed this action in the Madison circuit court against her other similar heirs by blood, and against her adopted heir (Woods), and in their petition plaintiffs averred that they and the other defendants, except Woods, were the only surviving blood relatives, next of kin and collateral or other heirs of the life tenant, and that they became the owners of the land under the deed of John J. Todd and wife upon the death of the life tenant. Plaintiffs prayed that the land be sold for the purposes of division among such heirs of the life tenant according to their interest, dependent upon their degree of relationship to her. Plaintiffs also averred that Woods claimed some interest in the land and he was called upon to assert it, which he did by his answer, it being his adoption by the life tenant as set out supra, and which he claimed entitled him to inherit the land after the death of his foster mother. He made his answer a cross petition against plaintiffs and his co-defendants, and asked that he be adjudged to be the sole owner of the land and that his title be quieted against the claims of any of them.

Plaintiffs demurred to that answer, which the court sustained and defendant, Woods, declined to plead further, followed by a judgment dismissing his answer and counterclaim and adjudging plaintiffs and the other defendants, except Woods, the owners of the farm, which the court directed to be sold for the purpose of division

of the proceeds among them. From that judgment Woods prosecutes this appeal. There is, therefore, squarely presented to us for determination the question as to whether Woods in the circumstances, is an ''heir'' of the life tenant within the meaning of that term as contained in the John J. Todd deed so as to entitle him (Woods) to the involved land upon the death of the life tenant, his foster mother? An answer to that question will now be attempted.

To begin with, it is acknowledged by all that it is competent for the legislative branch of the sovereignty to prescribe who may inherit the property of a deceased individual dying intestate by appropriately enacted statutes of Descent and Distribution. Embraced therein is authority of such legislative body to prescribe conditions under which others besides natural blood relatives may participate in such estates as an heir of the deceased. Pursuant to that authority most, if not all, of the states have enacted statutes whereby adult individuals may adopt another—even a stranger in blood—as an heir of their own whereby such adopted heir may inherit from them pursuant to the status created in proceedings had thereunder. Such statutes vary in phraseology, some of them permitting the adopted child or heir to inherit from the collateral kindred or natural heirs of his foster parent. However, it is well settled that unless such a consequence is authorized by the adopting statute the adopted heir may inherit only from his foster parent, and not through him or her so as to inherit from the latter's natural heirs.

Our statute (which has existed in its present form since 1860) has been construed in a number of cases. The first one to which our attention has been called is Atchinson v. Atchinson's Ex'rs, 89 Ky. 488, 12 S. W. 942, 11 Ky. Law Rep. 705, and extending down to Sanders v. Adams, 278 Ky. 24, 128 S. W. (2d) 223. Intervening cases will be found cited in the opinion in the latter case, and others may be found in the intervening cited cases therein. One of the intervening cases referred to in the Sanders opinion is Merritt v. Morton, 143 Ky. 133, 136 S. W. 133, 134, 33 L. R. A., N. S., 139. In that case the conclusion reached was the same as that made in the other domestic cases, and which was, that an adopted child under our statute might inherit from his foster parent, but could not inherit from the kindred

of such parent—the opinion saying: "The act of the foster parents in adopting the child is a contract into which they entered with those having the lawful custody of the child, an agreement personal to themselves, and, while they have a perfect right to bind or obligate themselves to make the child their heir, they are powerless to extend this right on his part to inherit from others. All inheritance laws are based or built upon natural ties of blood relationship, whereas an adopted child's right to inherit rests upon a contract, and hence only those parties to the contract are bound by it." To the same effect is the case of Lanferman v. Vanzile, 150 Ky. 751, 150 S. W. 1008, Ann. Cas. 1914D, 563, and the Sanders case followed those opinions, citing the cases referred to, together with text authorities to the same effect, the latest of which is 2 C. J. S., Adoption of Children, p. 455, Section 63, subsection "d".

It will be observed that in the John J. Todd deed the word "heirs," as therein employed, is descriptive of a group of remaindermen who succeed to the land upon the death of the life tenant, appellant's foster mother, and who obtain their title not through her, but under the John J. Todd deed. The precise question, therefore, is, whether or not he as the maker thereof can be said to have intended to embrace by the use of that word a stranger in blood—both to him and to his daughter as life tenant—who might thereafter be adopted by the latter under our statute supra? All the books and treatises dealing with the question, to which we have access or to which we have been directed, hold that a determinative fact in such circumstances is the intention of the creator of the title when he executed the instrument creating it—whether it be a will or a deed. In some, if not all of the domestic cases cited supra that factor is emphasized.

In 70 A. L. R. 621, there is the beginning of an extensive annotation upon the question here involved as arising from devices by will. It covers thirteen pages, in which reference is made to a great number of cases from various states of the Union, and practically all of them adopt and approve what we may designate as the "intention" rule supra. They hold that such controlling intention is ascertainable and discoverable by the courts in the same manner as it is done in the investigation of other questions, i. e., that it "must be ascertained

by the reading of the entire will (or deed) in the light of the surrounding circumstances," and "in the absence of circumstances showing a different intention, the testator is presumed to have used words in their ordinary sense or primary meaning." It is also pointed out in that annotation that the word "children" does not usually include an adopted child; especially for the purpose of enabling him to inherit or take title from a collateral heir or kindred of his foster parent. See Melek v. Curators of University of Missouri, 213 Mo. App. 572, 250 S. W. 614. In the case of Cook v. Underwood, an Iowa case reported in 209 Iowa 641, 228 N. W. 629, that court held that the word "heirs" of its own force does not embrace adopted children of the first taker or beneficiary. To the same effect is the case of Ansonia National Bank v. Kunkel, 105 Conn. 744, 136 A. 588. Many other phases of the question are discussed in that annotation, and also in the case of Mooney v. Tolles, 111 Conn. 1, 149 A. 515, 70 A. L. R. 608, just preceding the annotation. That opinion held that (quoting from the syllabus) "Whether an adopted child may participate in a testamentary provision for 'children' of the adopting parent depends upon the intention of the testator, as appears from a reading of the will in the light of all the surrounding circumstances."

We, therefore, see that in ascertaining the intention of the creator of the estate not only may the title paper which he executes be considered, but also the terms of the statute under which the adopted child was made heir by its foster parent should also be weighed, and whensoever it appears that it was not the intention of the one executing the conveyance to embrace adopted children or heirs they will not be permitted to inherit or take title from or through foster parents under a conveyance by a stranger to the adoption contract. In the instant case it will be noted from the inserted language of the deed—by which the involved title here in contest was created—that Todd, the grantor, recited that its consideration was, "natural love and affection" for the *grantees,* and the further consideration of "a mutual division * * * among the *heirs and children* of the parties of the *first* part." (Our emphasis.) It was, therefore, plainly expressed that all of the grantees in John J. Todd's deed—including the life tenant and also those who were to succeed to the title as remaindermen—were

persons for whom the grantors entertained "natural love and affection," and that they were also persons who would be "heirs * * * of the parties of the first part," upon the death of the grantors therein. It is, therefore, clear that John J. Todd and wife (who were the "parties of the first part") never contemplated or intended to embrace under the term "heirs," as employed by them in their deed, any stranger in blood to them, whom his daughter as life tenant might thereafter contract to adopt under our statute, since such one would not be one for whom the grantors entertained "natural love and affection," nor would he or she be an heir of the grantors in that deed. Todd and wife as the makers of the deed had the right under the law to name who should take the title to the land conveyed by them in remainder after the death of their daughter, and which included the right to exclude, either expressly or by implication, anyone not coming within their designation. They confined the remaindermen to those who would be *their* heirs and to those for whom *they* entertained "natural love and affection." It is, therefore, clear that under the rule supra, Woods, as the adopted child of the life tenant in this case, is not a remainderman succeeding to the land after the death of his foster parent within the contemplation of the makers of the deed conveying the property.

Furthermore, it will be observed that the adoption was made almost forty years after the deed was executed. It was, therefore, not executed in view of the adoption, since none had been made at that time, and to permit the life tenant in the circumstances to contract for an heir (which is the result of a proceeding under the statute as the opinions supra expressly hold) would be to empower and authorize her, not only to convert her life estate into practically a fee simple title, but to select by contract the one to take the title after her death as grantee in remainder under the deed of her parents who plainly contemplated no such result, nor were they parties to the contract of adoption. To give the Todd deed such interpretation would permit Woods, the contracted heir or child in this case, to take the involved land as heir of his foster parent and to allow her in the involved circumstances to defeat the intention of her grantor by substituting another and different remainderman than those designated by the grantor in his

deed or other conveyance. It would also practically enable a life tenant to convert his life tenancy into a fee simple title, so far as succeeding title holders are concerned, by contracting for a successor to the title by the employment of means other than conveying it by deed or will—each method accomplishing the same result.

The two cases of Haver v. Herder, 96 N. J. Eq. 554, 126 A. 661, and Laws v. Davis, 34 Ohio App. 157, 170 N. E. 601, largely and chiefly relied on by the appellant, Woods, for a reversal of the judgment, are not applicable, since the statutes of those jurisdictions, corresponding to our Section 2071 supra, are much broader and confer greater rights upon the adoptee than does our domestic statute—they providing in substance, that an adopted child shall be included in all grants of remainder estates unless he or she is expressly excluded by the use of the words "heirs of the body," or other language equally expressive of a contrary intent.

Extended discussion might serve to more clearly elucidate the questions involved, but since an opinion is not intended to be a treatise on the questions involved, and since the authorities cited cover all phases of the question, we have concluded that it is unnecessary to further lengthen the opinion, except to observe that all courts and text writers dealing with the questions involved are in accord that an adopted child inherits from its foster parents, but does not inherit through such parent from the latter's natural heirs, unless the local adopting statute so provides, or it is plainly the intention of the creator of the title that it should do so.

Wherefore, for the reasons stated the judgment is affirmed.

The whole court sitting.