[Civ. No. 12682.  First Dist., Div. One.  Sept. 21, 1944.]

M. R. GULARTE, SR., Appellant, v. JOSEPH MARTINS
et al., Respondents.

Rosendale, Thomas & Muller for Appellant.

Raymond W. Shellode for Respondents.

WARD, J.—In contemplation of a trip to the Azores, plaintiff and his wife, the owners of 110 acres of farm land which was under lease to one Quong Chong, gave to T. I. Martins a power of attorney to collect rentals of $3,300 a year as they became due under the lease and take care of the property. Shortly after plaintiff's departure the lessee forfeited his lease and T. I. Martins thereupon, in March of 1938, leased the land to his brothers, defendants herein, for a period of five years. The lease provided among other things that in case the "crop or crops planted on the leased premises are deficient and the returns not sufficient to cover all the expenses, the parties of the second part are *intituled* to get the wages at the reasonable rate for each and every hour spent*ed* on cultivation of the crops on the said premises and the use or depreciation of the farm equipment and the balance of net *f*rofit, must be delivered to the party of the first part. On such case, the parties of the second part must produce the *autentic* records of the expenses for the calendar year and the returns." The lease to Quong Chong did not contain such a provision. Plaintiff returned from his trip the latter part of 1938 and found defendants in possession and farming the lands. He testified at the trial that he could neither read nor write English; that he never received a copy of the lease; that he was informed by defendants' brother that it had been turned over to defendants, but was upon the same terms as

provided in the lease to Quong Chong. T. I. Martins testified that he either mailed plaintiff a copy of the lease or handed it to him personally.

The defendants farmed the lands in 1938, 1939, 1940 and 1941 and each year made a profit and each year paid the rental provided—$30 an acre. They claimed a loss for the year 1942, and invoke the above quoted provision of their lease to avoid payment for that year. Plaintiff brought action to collect the amount of $2,300 balance due on account of rental for the year 1942, defendants having paid $1,000 on account thereof. Following the trial of the case it was stipulated that the court might "go out and look at the place." Thereafter the court found that the premises described were not worth the sum of $30 an acre each year and decreed that plaintiff take nothing by his cause of action and that defendants be awarded their costs in the sum of $11.95.

Plaintiff in his first cause of action, relied upon at the trial, sets forth that defendants occupied the lands, raising crops thereon, by permission of plaintiff, from December 1, 1941 to November 30, 1942; that the use of the premises was reasonably worth the sum of $30 an acre for the designated period, and that the sum of $1,000 only had been paid, leaving a balance due of $2,300. As an affirmative defense the answer alleged that plaintiff and defendants entered into a written lease which contained the provision previously quoted. The lease was annexed to the answer. Plaintiff did not within the statutory period deny the genuineness and due execution of the instrument, which, it should be noted, was executed in 1938; appellant returned the same year from the Azores. Respondents continued to act under the lease without objection by him and it was not until this action was filed in 1943 that there seems to have been a formal disavowal of the lease, and then only as to the period set forth in the complaint.

The question of whether the provisions of section 448, Code of Civil Procedure, are binding on a party to the action who is not a party to the written instrument pleaded (see *City of Los Angeles* v. *Watterson*, 8 Cal.App.2d 331 [48 P.2d 87]; contrary, *Stoneman* v. *Fritz*, 34 Cal.App.2d 26 [92 P.2d 1035]) is unimportant to a disposition of this appeal, for even according to plaintiff's theory that he was not bound by the code section, he is nevertheless bound by the written lease pleaded because the evidence shows that a copy of the lease

was sent to him in the Azores, and that upon his return from the Azores he was given a copy of the lease, and thereafter fully approved the same and the authority of his attorney in fact to enter into it by accepting for two consecutive years the rentals provided for therein. In other words, the law will not permit him to avail himself of the benefits of the lease, with full knowledge of its provisions, and afterwards challenge the authority of his attorney in fact to enter into it.

At the trial defendants introduced the power of attorney given to their brother. It may be assumed that this power of attorney was not broad enough to authorize Martins to execute the lease. But the evidence shows that in 1938 Martins gave Gularte a copy of the executed lease and that he told Gularte of the lease he had executed on his behalf. There is also evidence that Gularte stated that he wanted the defendants to make either profits or wages. Also, when he returned in 1938 he knew the brothers were in possession. He accepted rent of $3,300 for 1939 and 1940. He knew of the lease and allowed them to stay in possession. Under such circumstances he is estopped to deny the existence of the lease.

Appellant contends that there is no proof of value or lack of value. It should be recalled that counsel specifically stipulated that the trial judge should view the premises. What he saw may be considered as evidence. (*Wood* v. *Davidson,* 62 Cal.App.2d 885 [145 P.2d 659]; *Anderson* v. *State of California,* 61 Cal.App.2d 140 [142 P.2d 88]; *Gates* v. *McKinnon,* 18 Cal.2d 179 [114 P.2d 576]; *Neel* v. *Mannings, Inc.,* 19 Cal.2d 647 [122 P.2d 576]; *Universal Sales Corp.* v. *California etc. Mfg. Co.,* 20 Cal.2d 751 [128 P.2d 665].)

It is also contended that a written statement of expenses incurred by respondents in farming the land for the period in question, admitted in evidence over objection of appellant, is insufficient without supporting evidence of performance and value. It is the duty of a defendant to plead matters which are not provable under a general or specific denial but which avoid the action or at least the theory outlined in the complaint. If the burden of proof is thrown upon the defendant (Code Civ. Proc., § 1981) the matter pleaded comes under the general heading of new matter, which must be proved with the purpose of defeating plaintiff's case. (*Dieterle* v. *Bekin,* 143 Cal. 683 [77 P. 664].) Whether

defendants failed to prove the new matter is a question to be determined by the trial court. Appellate courts are interested only in examining the record to determine whether there is any substantial evidence to sustain the conclusion reached by it. ■ Appellant's contention merely goes to the question whether there is sufficient, if any, supporting evidence. The exhibit introduced detailing the cost of the farming operations for the period in dispute is, in the absence of evidence to the contrary, sufficient to produce conviction in an unprejudiced mind that the land was cultivated; that specified reasonable sums were expended; that there was a depreciation of equipment; that labor was of the value indicated in the statement; that certain crops were sold for specified amounts and that the result for 1942 showed a net loss. (Code Civ. Proc., § 1826.) If appellant desired to determine whether the labor, cultivation, etc., were to the best of the ability of respondents, cross-examination was available. The cross-examination developed the following testimony by the agent: "The Court: Did you say anything to him [plaintiff] about leasing to your brothers? A. Yes. Q. What did you tell him? A. I told him the conditions of the lease, I said, 'Now, it is up to you whether you think you can do anything. You can do anything you please. I made it under those circumstances because my brothers can farm the ranch, and I didn't have any tenants before.' . . . Q. You never had any conversation with him in which you told him you had leased to your brothers under the terms that your brothers would either make money or get wages? A. Yes, he said, 'Well, in that case we can make fair on both sides. I don't want them to work for nothing.' Q. Did you tell him you had made a lease whereby your brothers would be sure to get either wages or profits? A. Yes, something like that. Q. What did you tell him? A. I told him that way, I said, 'I made this kind of an arrangement in order to rent the ranch for some years, because the water was bad, and the boys felt if they did make wages at a reasonable rate, you can reduce that from the rent.' Q. You said you would reduce a little on the rent? A. Yes. Q. Did you tell him if they didn't make money they would receive wages? A. Yes. Q. You told him that? A. Yes. Q. You are positive about that? A. Yes." [8] The objection interposed by appellant to the introduction of the exhibit was general and not specific. The exhibit was admitted. If

there was good ground for objecting to the character of the proof, a special objection might have obviated the claimed defect. (*Crinella* v. *Northwestern Pac. R. R. Co.*, 85 Cal. App. 440 [259 P. 774].) The record contains corroboration of the statement in many instances. Evidence was introduced to the effect that during 1942 the land was too wet to farm profitably.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.