[Civ. No. 12954. First Dist., Div. One. Feb. 5, 1946.]

Estate of FREDERICK CHARLES HOTALING, Deceased. BANK OF CALIFORNIA NATIONAL ASSOCIATION et al., Appellants, v. GEORGE CARSTULOVICH et al., Respondents.

 

W. A. Breen and J. Frank Murphy for Respondents.

PETERS, P. The executors of the will of Federick C. Hotaling petitioned the probate court for partial distribution, for an interpretation of the ninth paragraph of the will, and for instructions. The appeal is taken by the testamentary trustees, and by the trust beneficiaries, Marie Gildroy Gray and Alexander Gildroy, the chief beneficiaries under the will. The executors stated at the time of trial that their position was neutral, and they did not actively participate in the trial, nor have they appealed. However, the testamentary trustees are the same persons who are executors, and respondents seem to object to their participation in this appeal. They are clearly proper parties. The trust corpus is composed of the residuary estate. The trial court's construction of the paragraph in question reduces the trust corpus. The beneficiaries and the trustees were therefore adversely affected by the order and are entitled to appeal.

The testator was a man of considerable wealth. The estate is appraised at over a million and a half dollars. His wife was dead when he executed the will, and he had no issue. He had no close blood relatives. The chief beneficiaries are Marie Gildroy Gray and Alexander Gildroy, who are the niece and nephew of his deceased wife, and who are the beneficiaries of a trust composed of the residuary estate. The will was drafted by an attorney and contains many specific bequests to friends, to distant relatives, to relatives of his wife, and to charity. It then contains the paragraph entitled ''Ninth'' which is the subject of the present proceeding. It reads as follows: ''I hereby give, devise and bequeath to my good friends, George Carstulovich and Frances Carstulovich, his wife, as joint tenants, a life interest in and to my real property located at Santa Cruz, California, known as 'The St. George Hotel,' together with all of the furniture, furnishings, fixtures, bric-a-brac, rugs, carpets, dishes, silverware, kitchen utensils and all other personal property of every nature and description now being used in the conduct and operation of said hotel.''

It is this clause that the executors want construed. The

petition alleges that there is a dispute between the various legatees over whether this devise included only the property operated as a hotel, or also included various stores occupied by several different tenants. Marie Gildroy Gray filed an unverified answer alleging that the stores were not included. The Carstuloviches contended at the trial that the entire premises were included within the life estate. The trial court agreed with the Carstuloviches.

The controversy arises because the property over which the hotel is constructed was not always in one ownership and because of the somewhat ambiguous language of the paragraph in question. At one time a person by the name of Simpson, and at another time a person by the name of Pease, owned a part of the property. The Hotaling holdings were enlarged by the purchase of the Simpson and Pease property, and since that time (1914) the entire property has been owned by the Hotalings. Located on the property is a building, or buildings, part of which is two stories high and part three stories high. All above the first floor in this structure is devoted to hotel purposes. The corridors, the wiring, the plumbing, and heating are continuous throughout the building. The structure fronts on Pacific Avenue in Santa Cruz and extends through the entire block to Front Street. A picture of the outside of the building included in the record indicates that the building has been finished as one continuous unit. On the street floor are the hotel lobby and the Saddle Rock Restaurant and various other rooms, stores and shops, all facing on Pacific Avenue.

George Carstulovich had known the testator for many years. In 1931 he leased from him the Saddle Rock Restaurant, and since 1934 has also leased the hotel. He admittedly did not lease some of the other ground floor rooms, these being leased by Hotaling directly to individual tenants. These tenants paid their rent to Hotaling and not to Carstulovich, and over their premises the Carstuloviches exercised no control.

Certain extrinsic evidence was introduced for the purpose of explaining what was intended by the clause in question. That evidence showed that when the testator made the will in July of 1943, and when he died, the only real property he owned in Santa Cruz was the property here involved. This property was assessed to Hotaling as one piece, the improvements were assessed as a unit, and his agents handled the ac-

count as one single account. A floor plan of the street level bore the designation "Hotel St. George." The various leases to the various tenants were produced as exhibits. They refer to the leased store by street number and as being located in the building variously described as "The St. George Mission Inn," "The St. George Hotel Building" or the "St. George Hotel." There is ample evidence that the entire building was commonly known and referred to as "The St. George Hotel," and that the testator frequently referred to it in that manner. In 1938, when the local paper was running a special edition, Hotaling caused to be inserted an advertisement therein containing a picture of the entire structure and carrying greetings from the "St. George Hotel Properties."

In the Carstulovich lease of 1939, the last lease executed between the parties, the premises leased are described as: "All of that certain building designated as The St. George Hotel, together with the building premises designated as The Simpson & Pease Buildings adjoining the said St. George Hotel to the North . . . and also the store fronting on Pacific Avenue known as the Saddle Rock Restaurant. . . ." The lease expressly excepts "the ground floor space, together with the basement of the Simpson & Pease Buildings, extending from the South line of Frank Montara's property to the North line of the St. George Hotel property." An inventory of certain personal property is attached to the lease and it describes the furniture and furnishings leased as the "furniture, furnishings, fixtures and appliances now located in that certain hotel known as the St. George Hotel, situate in the Hotaling Building and in the Simpson & Pease Buildings now owned by Frederick C. Hotaling." Rent statements sent to Carstulovich by the agents of Hotaling each month referred to the "Hotel St. George and 67 Pacific Avenue."

■ Authorities need not be cited for the fundamental proposition that the object of testamentary construction is to ascertain the intent of the testator from the language of the will read in the light of the surrounding circumstances at the date of its execution. The language of a will always will be liberally construed to effect the testator's evident intent as expressed in the instrument considered as a whole. ■ Appellants seem to contend that in the instant case the meaning of the language used is so clear that extrinsic evidence was inadmissible to explain its meaning. Based on this premise

they urge that the proper interpretation is a question of law and not a question of fact, and cite such cases as *Estate of Platt,* 21 Cal.2d 343 [131 P.2d 825]. However, the rule is well settled that where, as here, extrinsic evidence is admissible on the issue of intent, the interpretation is at least partially a question of fact and the trial court's interpretation will not be disturbed unless shown to be unreasonable—i.e., is unsupported.

The first part of the clause in question is a devise of a life interest "in and to my real property located at Santa Cruz, California, known as 'The St. George Hotel.' " Standing alone, or interpreted with the extrinsic evidence, the only reasonable construction of that portion of the clause is that it included a life estate in the entire property. It is true that a devise of the top floor of a building is a devise of "real property," but it is equally true that the words "real property," without further limitation, are broad enough to include all interests in realty and convey all of the testator's interest therein unless expressly limited. (Prob. Code, § 120; see cases collected 26 Cal.Jur. p. 972, § 270; see, generally, cases collected 152 A.L.R. 938; 12 A.L.R. 1179.) Therefore, while it is true, as appellants contend, that if a devise is limited to the top floors of a building it is still a devise of real property, where as here, it appears that the entire property is commonly known as the "St. George Hotel" and where it appears that was the usual way the testator referred to it, and the devise is of the real property "known" as the St. George Hotel, it seems quite clear that the whole property is included in the devise. To say the least, such is the most reasonable construction of that portion of the clause.

Appellants contend that however reasonable this interpretation may be of this clause when read alone, when the clause is read in the light of circumstances as they existed at the time the will was drawn, and in light of the closing portions of the paragraph, but one reasonable construction is possible, namely, that the real and personal property bequests are limited to the portion of the property being operated as a hotel and restaurant. They emphasize that when the will was drawn the Carstuloviches were occupying only the hotel and restaurant under a lease expressly excluding the ground floor stores. They point out that the closing paragraph reads "together with" the personal property "now being used in the

conduct and operation of said hotel.'' There can be no doubt
that if this last quoted clause stood alone it more aptly refers
to the personal property used in the conduct of the hotel as
an inn than it does to the entire property. But what appellants
fail to recognize is that the phrase, read as a whole, contains
a latent ambiguity. A mere reading of paragraph ninth, with-
out the extrinsic evidence, would indicate no ambiguity at all.
The clause devises the real property of the testator known as
the ''St. George Hotel'' and the personal property used
therein to named legatees. On its face that is not ambiguous.
But when the extrinsic evidence is considered it is quite clear
that the phrase real property ''known as 'The St. George
Hotel' '' could have referred to any one of several things.
From the Carstulovich lease it would appear that there are
separate buildings, one of which is known as the ''St. George
Hotel.'' From the lease and other evidence it would appear
that the Saddle Rock Restaurant and the upper floors of the
entire structures are known as the ''St. George Hotel.'' From
the evidence considered as a whole it appears that the entire
structure is known as the ''St. George Hotel.'' When the
clause is read with these possibilities in mind it would appear
that the phrase ''my real property located at Santa Cruz,
California, known as 'The St. George Hotel' '' considered
alone most reasonably refers to the entire structure, while the
phrase referring to the personal property ''now being used
in the conduct and operation of said hotel,'' considered alone,
would seem to refer to that St. George Hotel which was being
operated as an inn. Once either interpretation is adopted the
other clause is not necessarily inconsistent. If the entire
property is meant, then ''conduct and operation of said hotel''
can be construed to mean not the conduct of the hotel as an
inn, but the conduct and operation of the entire premises.
On the other hand, if the last phrase controls the first, then
the reference to ''real property'' is not inconsistent, and but
those premises used as an inn were devised. When the entire
clause is read together with the extrinsic evidence it seems
clear that the most reasonable interpretation of the entire
paragraph is that both phrases refer to the entire structure.
Certainly we cannot say that this interpretation given the
paragraph by the trial court is unreasonable or unsupported.
This construction does not disregard the phrase ''said hotel.''
As already pointed out, those words could have meant the

entire structure as well as those portions operated as an inn, and where the extrinsic evidence is considered that is the most reasonable construction. It is true that the ordinary meaning of the term "hotel," is an inn or hotel (*Fay* v. *Pacific Improvement Co.*, 93 Cal. 253 [26 P. 1099, 28 P.943, 27 Am.St. Rep. 198, 16 L.R.A. 188]) but in this case its meaning is ambiguous.

■ The argument so strongly relied upon by appellants that at the time the will was made the Carstuloviches were in possession of only a part of the real property and that therefore the testator only intended to give them that portion does not seem persuasive and certainly is not conclusive. It does not necessarily or even probably indicate that the intent of the testator was to limit them to that part. They were old friends of the testator, while the appellant beneficiaries were not related to him by blood, being relatives of his wife. Other than this, their personal relationships with the testator do not appear. While an interpretation favorable to relatives is preferred (*Estate of Hartson*, 218 Cal. 536 [24 P.2d 171]) the relationship here is not a close one, and the strength of that inference is dependent upon the degree of the relationship. Moreover, the inference is here rebutted by the other evidence.

Appellants lay great weight upon the terms of the Carstuloviches' lease, and point out how that lease stated in great particularity the portions of the premises demised. That fact, however, would seem to support respondents rather than appellants. It indicates that when the testator wanted to limit the area involved he knew how to do so. The failure so to limit the area involved in the will, with the example of the lease before him, supports an inference that by the will he intended the entire structure to be included rather than only a limited portion.

*Estate of Brown*, 119 Cal.App. 195 [6 P.2d 319], cited by appellant, is not in point. In that case the devise was of "the dwelling at No. 506 South street," and the size of the lot upon which the building was located was expressly stated. The devisee was occupying the premises at the time the will was made, and the testator was occupying another residence behind that at 506 South Street, which was on another lot, which was not included within the size of the lot specified in the will. Clearly, only the dwelling at 506 South Street and the lot specifically described by the testator passed, although

the building on the next lot was connected by a shed with that in which the devisee resided. In the present case there is no such clearly expressed intent to sever the upper and lower stories.

Appellant argues that where the intent of the testator to use words in their nontechnical sense is clear, the technical meaning must be subordinated to the general testamentary scheme, citing *Estate of Hollingsworth,* 37 Cal.App.2d 432 [99 P.2d 599]. The argument is not helpful for the reason that here no general plan as to this property appears. The trusts are composed of the residual estate. No other express reference to the Santa Cruz real property appears in the will. In order to find a testamentary scheme to give the devisees only that portion used by them as a hotel, the construction of the will must first be assumed. If a clear intent appears, the technical meaning of words will be disregarded. (*Estate of Heard,* 25 Cal.2d 322 [153 P.2d 553].) But in the present case no clear intent appears. The very fact that there are stores on a piece of real property owned by the testator and known as the St. George Hotel, which are not used in connection with an inn of the same name, appears only by extrinsic evidence. The whole of appellant's argument must turn on the construction of the word ''hotel'' as used in the last phrase of the paragraph, ''now being used in the conduct and operation of said hotel.'' Assuming that the paragraph is to be read as a whole, there is no more reason for giving ''hotel'' its technical meaning than there is for giving ''real property'' its technical meaning.

Appellants contend that the admission of the oral declarations of the testator as to his intent was prejudicial error. Probate Code, section 105, provides, in part, that when an uncertainty arises upon the face of a will as to the application of any of its provisions, the testator's intent is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding the oral declarations of the testator as to his intent. An exception exists, however, in the case of a latent ambiguity. Where the testator's expression is clear, but applies equally to more than one object, evidence of his oral declarations is admissible to identify the property involved. In such a case the evidence is admissible not to contradict the written instrument, but simply to explain that instrument where it is capable of being

interpreted as being applicable to several different things. Thus, in the *Estate of Greenwald*, 19 Cal.App.2d 291 [65 P.2d 70], the respondent called as a witness the attorney who drafted the will, and, over objection of appellant, interrogated him as to conversations with the deceased and instructions given him by deceased during the course of the preparation of the will. The court stated that it is the settled rule in this state that where a latent ambiguity exists, such evidence is admissible. (See, also, 4 Page on Wills, p. 660, § 1625, particularly at p. 669.)

Appellant vigorously contends that the ambiguity in the present case is patent and not latent. The terms "latent" and "patent" are confusing. Extrinsic evidence is admissible in order to determine what the testator meant by what he said and to identify the property which is the subject of the devise. Extrinsic evidence is inadmissible to show that the testator intended something other than what he said where his expression is clear and applicable to only one object or set of facts. In the present case, extrinsic evidence was clearly admissible to identify that real property "known" as the "St. George Hotel." This evidence having been admitted, the latent ambiguity is revealed—there is more than one thing that could be so described. In this case the evidence which was admitted over objection consists of testimony of the scrivener of the will as to conversations and instructions given him by the testator prior to drawing of the will. The testimony was to the effect that the testator had often spoken of his real property in Santa Cruz as the "St. George Hotel" and that that was his expression whether he referred to the Carstulovich property or the stores, and that he never designated the property in any other way, and that when the will was being drawn he stated that "he would like to leave the St. George Hotel property" to the Carstuloviches for life.

In the *Estate of Schaetzel*, 44 Cal.App.2d 320 [112 P.2d 324], the refusal of the trial court to receive the testimony of the attorney as to decedent's instructions was said not to be error. The court in that case apparently considered the language clear and unambiguous. In this case the ambiguity was clearly latent and the oral declarations therefore admissible.

■ Appellants next contend that the trial court erred in ordering the furniture in rooms 245 and 248 of the hotel

distributed to respondents. The inventory of furniture attached to the Carstuloviches' lease excepts therefrom Hotaling's personal furniture and other effects, and in the lease itself rooms 245 and 248 were reserved for Hotaling's exclusive private use. Most of the furniture in these two rooms was of the same type as that used in other rooms of the hotel, but it was never removed from the testator's rooms nor used in any other part of the hotel during the testator's lifetime. Inasmuch as we have already held that the trial court correctly determined that the words "said hotel" refer to the entire real property, it is obvious that this furniture was used in the conduct and operation of the property as a whole. No error was committed by the trial court in reference to this property.

Appellants make a most involved argument to the effect that the trial court committed reversible error in failing to find on all of the material issues raised by the answer of Marie Gildroy Gray. The trial court found that the allegations of the executors' petition were true except as otherwise found. One such allegation thus found to be true was to the effect that the stores are occupied by tenants conducting businesses independent of the hotel business. There was no express finding that the stores were "used in the conduct and operation of said hotel." Failure to so find, according to appellants, is fatal to the judgment. The court did find, however, that the testator intended to and did devise the entire real property described in the finding "together with the improvements, buildings, stores, storerooms and structures, thereon and therein" to the Carstuloviches.

Appellants contend that since the probate court has equitable jurisdiction it must find on probative facts material to the exercise of a sound judicial discretion. (*Fairchild* v. *Raines*, 24 Cal.2d 818 [151 P.2d 260].) The rule of that case is sound, but is not here applicable. In that case the trial court granted an injunction without finding on issues of fact set up in the answer as grounds for denying the injunction. The issue was addressed to the discretion of the trial court. In the present case the issue presented to the trial court was not one of judicial discretion. The ultimate question presented was the meaning of paragraph ninth of the will. When the trial court found that the testator intended to and did devise the entire property to the Carstuloviches it passed on the only issue before it. The trial court was not required to find on every evidentiary factor leading up

to that interpretation. Once it had determined what the testator meant by paragraph ninth, findings to meet the allegations of the answer that the stores were not under the management and control of the Carstuloviches in connection with the operation of the hotel business, and that Hotaling reserved, during his lifetime, the right to collect the rentals thereof, were entirely immaterial. Findings either way on those matters would in no way affect the ultimate finding as to what was meant by paragraph ninth.

The fallacy of appellants' argument is that it assumes the meaning intended by the testator by the words "said hotel." Obviously, if, as a matter of law or fact, only the hotel as an inn were intended, then a finding that the stores were or were not used in the conduct of the hotel as an inn would have been indispensable. But once the trial court determined, as it did, that "said hotel" had the broader meaning of the entire structure, a finding on whether the stores were or were not used in the conduct and operation of the hotel became totally immaterial. The real and only issue in this case was whether extrinsic evidence was admissible to explain the latent ambiguity. Since it was admissible, and since that evidence supports the finding that the thing described was the entire property, the only issue presented was passed upon, and that finding is conclusive.

The last contention of appellants is that error was committed because the trial court did not insert in the decree of distribution a requirement that the life tenant sign and deliver to the remainderman an inventory of the property as required by section 1065 of the Probate Code. There is no doubt that that section requires that the life tenant must give such an inventory to the remainderman, together with a statement that upon the decease of the life tenant the property will be delivered to the remainderman, but there is no requirement that such provision is an indispensable part of the decree of distribution. Such a provision undoubtedly could be written into the decree, but when, as here, it is omitted, it is a part of the decree by necessary implication by virtue of the Probate Code section. It is not to be assumed that where the decree shows that a portion of the estate distributed is a life estate, that the executors are going to be false to their trust and not require the receipt and declaration required by the code section. That code section makes the requirements thereof as much a part of every decree of

distribution involving life estates as if written into the decree. If the executors should attempt to deliver the property to the life tenants without requiring the receipt and declaration, the court has ample powers at the suit of the remainderman to enforce the requirements.

The order appealed from is affirmed.

Ward, J., and Ogden J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied April 1, 1946.