[Civ. No. 15274.   Second Dist., Div. Two.   July 2, 1946.]

ALEXANDER BISNO, Respondent, v. LOUIS HERZBERG et al., Defendants; MONTECITO HOTEL, INC. (a Corporation), Appellant.

J. George Bragin and Max M. Gilford for Appellant.

Martin Goldman and Alvin P. Jackson for Respondent.

MOORE, P. J.—This is an action to reform a written instrument in words and figures as follows:

"MONTECITO HOTEL                                    April 27, 1944

Price: $102,500.00                                  Cash: $17,500.00

Balance of $85,000 payable 8% per annum payable monthly plus taxes and insurance monthly. After 5 years interest is reduced to 4% per annum and prepayment of 4% per annum. Deed to be given when price has been reduced to $60,000

Montecito Hotel, Inc., acknowledges receipt of $1,000 to bind this contract, $4,000 to be paid on evidence of good title, balance on or before June 1st.

BUYER: A. Bisno or his assignee

SELLER: Montecito Hotel, Inc.

Louis Herzberg"

Upon a proper complaint to revise the writing to express the true and complete intention of the parties, following a trial the court decreed that defendant as owner agreed to sell and plaintiff agreed to buy the Montecito Hotel consisting not only of seven parcels of real estate and improvements situate thereon but also of the furniture, fixtures, equipment and all personal property, including the liquor license of defendant, used in and about and in connection with the operation of the hotel, for the sum of $102,500 payable as follows: $1,000 of even date with the writing, $4,000 upon the production of evidence of good title in the seller and $12,500 on June 1, 1944. Inasmuch as the controversy involves but one issue the other details of the contract found to have been agreed to will not be necessary to the consideration and determination of the one question, namely: Did the parties intend that the agreement of purchase and sale should include all of the furniture, furnishings, equipment and the liquor license?

Because respondent had been engaged as a real estate broker and operator for twenty-five years and owned three hotels in the State of Texas appellant argues that respondent must have known his own purposes and intention at the time of the execution of the writing, and that because of the rule that proof in actions for reformation must be clear, unequivocal,

convincing and free from reasonable doubt the respondent failed to prove his case. (Citing 22 Cal.Jur. 742.) ■ But the rule with reference to the reformation of a written contract is that the evidence must be clear and convincing to the trial court, and on appeal its decision upon a conflict of evidence is conclusive. (*Sullivan* v. *Moorhead,* 99 Cal. 157, 161 [33 P. 796].) When a judgment is attacked as being unsupported the power of the appellate court begins and ends with its determination as to whether there is substantial evidence which will support the judgment of the trial court. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183]. See, also, *Herbert's Laurel-Ventura Inc.* v. *Laurel Ventura Holding Corporation,* 58 Cal.App.2d 684, 691 [138 P.2d 43] ; *Estate of Bristol,* 23 Cal.2d. 221, 223 [143 P.2d 689] ; *Loewenberg* v. *Schneider,* 14 Cal.2d 305, 307 [93 P.2d 1014] ; *People* v. *Alexander,* 41 Cal.App.2d 275, 283 [106 P.2d 450, 916] ; *Shahabian* v. *Najarian,* 14 Cal.App.2d 435, 443 [58 P.2d 396] ; *Kling* v. *Crown Finance Corporation,* 63 Cal.App.2d 33, 36 [146 P.2d 54].) ■ A mere conflict of testimony as to a mutual mistake or the mistake of the plaintiff and the fraud of the defendant does not require a denial of the relief demanded (*Sullivan* v. *Moorhead, supra*), despite the general rule that the evidence must be clear and convincing. It must be presumed that in reaching its conclusion the court considered and was governed by such general rule in weighing the evidence. (*Ford* v. *Ford,* 44 Cal.App. 415, 418 [186 P. 164].) The rule that the evidence of mistake or fraud in the execution of a writing which is offered for reformation must be clear and convincing is not a requirement of unanswerable evidence. (*Hobart* v. *Hobart Estate Co.,* 26 Cal.2d 412, 445 [159 P.2d 958].)

■ The only question for consideration by the court of review with respect to the sufficiency of the proof is whether such evidence of the mutual mistake or other alleged grounds for the reformation of the agreement if standing alone without contradiction would establish a prima facie case. (*Roush* v. *Kirkman,* 42 Cal.App. 115 [183 P. 353].) If a mere denial by a defendant that he was mistaken or that he had committed a fraud were sufficient as a matter of law to prevail against the testimony of the party who claims that the writing offered for reformation does not express the true agreement of the parties, rarely or never could a plaintiff in such an action prevail.

█ The testimony of respondent and his associate, Mr. Snader, is sufficient to prove that the terms agreed upon at the first meeting of the parties included the movables as contended by respondent. A few days prior to his call at the hotel respondent learned that it was for sale. Accompanied by Mr. Snader he visited the hotel on April 27, 1944, and engaged Mr. Herzberg, president of appellant, in negotiations for its purchase. Concerning his conversations with that gentleman respondent testified substantially as follows:

"Mr. Snader, my associate, and I arrived at the Montecito hotel about 11 o'clock on the morning of April 27, 1944. Mr. Herzberg arrived about an hour later. After some conversation with him he showed us the building, the various rooms, the boiler room. We three walked through the kitchens, the cocktail lounge and the dining room. We then returned to Mr. Herzberg's private office.

"I told Mr. Herzberg that my understanding was that he wanted $100,000 for the building and contents and that he wanted $15,000 cash and that he was asking payments for the balance at the rate of $1,000 per month including interest at 4% and taxes and insurance. He agreed that that was his price.

"Prior to making the contract I said that I would like to know what furniture we were getting there and the condition of it and he said the furniture in the building was all good with the exception of about six rooms that needed new or better furniture and that he would show me the type of furniture. He then showed us the rooms and the property and then after we saw that we went back to his office and talked further on negotiations."

Respondent then testified as to conversations with reference to the terms of the sale in which it was agreed that the price should be $102,500, $17,500 cash, appellant to take 8% interest for five years, after which he was to accept 4% interest and 4% per annum on the principal until the indebtedness should be reduced to $60,000. He would then give a deed and take back a first mortgage for the balance. Further, with reference to the items to be included in the sale respondent proceeded:

"After I had stated to Mr. Herzberg my understanding of his price and terms for the building and contents there was discussion about the inventory of liquor. Mr. Herzberg said that I would have to pay extra for the liquor inventory and the unopened packages of food. To this I agreed because it

was the customary way to make a deal. I am sure beyond the question of any doubt that he did not ask me to enter into an agreement at a later date for the purchase of the furniture. There was nothing said about the restaurant equipment except that he showed me what equipment they had there. He showed me the bar but nothing else was said about it. One thing I very specifically mentioned before I drew up this agreement was the liquor license and he said it was included also.

"The word Montecito Hotel used in the memorandum meant to me the land, building, contents, furniture, the equipment, everything that belonged to the corporation other than the liquor inventory and the unopened packages of food. We discussed the income of the hotel and the income of the restaurant and of the bar."

The witness Snader in substance testified:

"I accompanied Mr. Bisno to Santa Barbara and to the Montecito Hotel. After Mr. Bisno and I had looked around the hotel for a while Mr. Herzberg arrived and asked if we had seen the hotel. After showing us around some other places he invited us into his office to talk the matters over. We sat down and I asked Mr. Herzberg regarding the heating plant there, the Oil-O-Matic. He invited us to the basement to show it and said 'We have recently spent $700 or $800 to remodel this and everything is in perfect condition. The furniture needs no repair. I have spent thousands of dollars here. The carpets are in good shape'—and everything in general was shown to us to be in fine shape. *Mr. Bisno was present at the conversation.*

"He then took us to see some particularly nice rooms off a balcony which were in perfect condition. He said, 'You can see what the hotel is like. That is the way it is all the way through.'

"In the meantime we had gone through the dining room, cocktail bar and the kitchen and I think he requested us not to make it too obvious what we were doing and so we went into his room and there we discussed the terms of the sale upon which agreement was reached. So Mr. Herzberg then said, 'If you will make that payment $17,500, I will make the deal as is; I will just walk right out of this building and you fellows can have it anytime; you can have it tomorrow if you want it.' Bisno said, 'Well, that is all right. Let us go to Los Angeles and have the contract drawn up.' To which Mr. Herzberg replied: 'No, if we don't make a deal right this minute,

if you fellows walk out of this building there is no deal. I want to go east. If I don't make a deal today I am hiring a manager and there is no need talking about the deal.'

"Mr. Herzberg said that the $102,500 included the furniture, fixtures, equipment, the license, the bar, everything with the exception of the inventory of food and liquors. My recollection is that he used the expression 'lock, stock, and barrel.'

"That is the way the contract was drawn up. Mr. Herzberg shook both Mr. Bisno's hand and my hand and said, 'Well, I think you fellows made a dandy deal here. You won't have to spend anything on any of this furniture, or any of this equipment for a long, long time because I have put it in top shape.' After some further discussion we agreed to meet at the broker's office on the following Saturday to complete the deal.''

Further evidence of the intention of defendant to include all of the contents of the building was the testimony concerning the discussion with reference to the income of the hotel, of the restaurant, of the bar and of the expense of operating each of them. How could the purchaser of a hotel reckon upon the earning power of his investment if he did not know the amount to be invested? The determination of Mr. Herzberg to make an immediate sale of the hotel on that day; respondent's necessity of obtaining furniture for its operation and a license for the bar; the fact that no mention was made by Mr. Herzberg in his conversations with Bisno and Snader of his desire to sell the furniture or of respondent's need of it, or of the difficulty the latter might experience in acquiring such articles as would be indispensable to the conduct of the hotel —such facts supply inferences in support of the testimony of respondent.

But aside from the reasonableness of the trial court's finding that the parties intended to include the movable contents of the hotel in their contract of sale, it requires no strain of the rules of construction or of the judicial conscience to determine from the memorandum alone that such was their intention. It is a very brief document but it indicates that $102,500 is to be paid for the Montecito Hotel and specifies the terms of payment. The Oxford and Webster dictionaries define *hotel* as a house for entertaining strangers or travelers. In view of such universal significance of the word and its implications it is unreasonable to conceive that appellant had any thought at the time of signing the memorandum other than

that *hotel* embraced all of the contents of the Montecito other than the stock of merchandise in package. This conclusion is supported by the language of the Missouri Court of Appeals which determined that a hotel is a place where lodging is furnished to transient guests as well as one where both lodging and food are furnished (*Metzler* v. *Terminal Hotel Company,* 135 Mo.App. 410 [115 S.W. 1037]), followed by that of the Supreme Court of Oklahoma to the effect that the word hotel as used in an accident policy ''did not mean the bare building that was used for the hotel. . . A building is a necessary part of a hotel, but the furnishings and all equipment therein are as necessary to make a hotel as the building itself, and therefore the word 'hotel' necessarily embraces the personal property that must be used therewith, including the bedding and heating facilities.'' (*Commercial Casualty Insurance Co.* v. *Adkisson,* 152 Okla. 216 [4 P.2d 50, 53].)

The ordinary terms set forth in a contract for the purchase of a hotel are a part of the contract even though not set forth in full; and where such terms must be supplied by construction the contract is sufficiently definite to support a decree for specific performance. (*Janssen* v. *Davis,* 219 Cal. 783, 888 [29 P.2d 196].)

At some length appellant in its brief sets forth the testimony of the witnesses Minster and Hanford to show that appellant had listed the hotel and its contents with Mr. Minster, a hotel broker, some two months prior to the date of the written memorandum at the same price agreed upon by the respondent and appellant. It will not be necessary to discuss the merits of the argument as to whether such evidence was proper. Conceding it to have been *res inter alios acta* and therefore inadmissible, the proof was abundant without it and the court is presumed to have ignored it in deriving its final decision. (*Cordi* v. *Garcia,* 56 Cal.App.2d 584 [132 P.2d 887] ; *Roth* v. *Thomson,* 40 Cal.App. 208, 216 [180 P. 656] ; *Farmers and Merchants National Bank of Los Angeles* v. *Stowell,* 6 Cal.App.2d 373, 378 [44 P.2d 392].)

The judgment is affirmed.

McComb, J., and Wilson, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 29, 1946.