[L. A. No. 20156. In Bank. July 30, 1948.]

Estate of EDWIN PIERCE, Deceased. HELEN PIERCE SONTHEIMER, as Trustee, etc., et al., Appellants, v. MARJORIE A. PIERCE, as Guardian, etc., et al., Respondents.

Warner, Peracca & Magana, Wagener & Brailsford, James O. Warner, Henry N. Cowan, W. C. Shelton and George W. Burch, Jr., for Appellants.

Bailey & Poe, Rufus Bailey and Carl N. Huff for Respondents.

TRAYNOR, J.—By a holographic will dated March 1, 1933, Edwin Pierce left his entire estate in trust. The will provided that a monthly annuity be paid to his widow, Edna Dyer Pierce and that the residue of the net income be divided in ten equal shares, two shares to each of the four children of a deceased brother and one share to each of the two children of a deceased niece. The provisions requiring construction are:

(1) "Should any of the annuitants, children or grandchildren of my late brother, W. A. Pierce, die before the final distribution of my estate, his or her annuity shall be distributed in equal shares to his or her children (lawful issue), until final distribution.

(2) "At the death of the last of the annuitants, Edna Dyer Pierce, William J. Pierce, Grace P. Holland, Chas. A. Pierce and Harry A. Pierce, it is my will that my estate be liquidated and distributed in equal shares, to and among the surviving grandchildren of my late brother William A. Pierce, said grandchildren being the lawful issue, of the children of my late brother, William A. Pierce." (Underlining by the testator.)

At the date of the testator's death on April 14, 1935, Harry A. Pierce, one of the designated beneficiaries of the trust, had no children. In 1943, he and his wife, Marjorie A. Pierce, adopted Iola Ann Pierce, and in 1944, they adopted Dolores Amelia Pierce. Harry A. Pierce died in 1945 and Marjorie A. Pierce, acting as guardian *ad litem* for the two children, made a claim in their behalf for his annuity upon the trustee. The trustee then petitioned the trial court for instructions to determine whether the adopted children were entitled to receive the annuity. The trial court entered an order that they were. The trustee and beneficiaries appeal.

The question for determination on this appeal is whether the testator used the term ''lawful issue'' to exclude adopted children. Respondent contends that the statutes governing the status of the children and their rights to inherit control the construction of this term. Section 228 of the Civil Code establishes the relationship of parent and child between an adopted child and the adoptive parent, and section 257 of the Probate Code, incorporating the rule of *In re Newman,* 75 Cal. 213, 219 [16 P. 887, 7 Am.St.Rep. 146], provides that an adopted child succeeds to the estate of an adoptive parent in the same manner as a natural child. It was held in *In re Newman, supra,* that an adopted child is included within the meaning of the term ''issue'' as then used in the statute of succession. ''If the adopted child is by virtue of its *status* to be 'regarded and treated in all respects as the child of the person adopting,' and is to 'have all the rights and be subject to all the duties of the legal relation of parent and child,' the right to succeed to the estate of the deceased parent must be included.'' (*In re Newman, supra,* 75 Cal. 213, 219.) Even though an adopted child has a status with respect to its adoptive parent identical to that of a child born of such parent and succeeds to the estate of an adoptive parent in the same manner as a child born of such parent, it does not follow that such status is determinative in construing the terms of a will. It is fundamental in the interpretation of wills that the testator's intent be derived from the language of the will itself and, under Probate Code, section 105, when an uncertainty appears upon the face of the will, from the circumstances under which it was executed.

The procedure for adoption, unknown at common law, is entirely statutory. (*Matter of Cozza,* 163 Cal. 514, 522 [126 P. 161, Ann.Cas. 1914A, 214].) Adoption creates

a status to which attach the legal incidents of the relation of parent and child. Section 228 of the Civil Code defines the rights and duties between an adoptive parent and the adopted child and requires adoptive parents to regard adopted children as children born of such parents. It does not, however, require persons other than adoptive parents to regard them as such in the drafting of private instruments such as wills, trusts, and deeds. ''The adoption statutes of this state do not purport to affect the relationship of any person other than that of the parents by blood, the adopting parents, and the child. It is the person adopting the child who, by the express terms of the section, after adoption 'shall sustain towards each other the legal relation of parent and child and have all the rights and be subject to all the duties of that relation . . .' '' (*In re Darling*, 173 Cal. 221, 225 [159 P. 606].) Even under the statute of succession, adopted children are not regarded as children born of the adoptive parents with respect to inheritance from relatives of the adoptive parents. (*Estate of Pence*, 117 Cal.App. 323, 333 [4 P.2d 202]; *Estate of Jones*, 3 Cal.App.2d 395, 400 [39 P.2d 847].) ''The adoption simply fixes the *status* of the child as to its former and adopted parents. To its grandparents by blood it continues to be a grandchild, and the child of its parents by blood. It does not acquire new grandparents in the persons of the father and mother of an adopting parent.'' (*In re Darling, supra*, 173 Cal. 221, 226.)

In the determination of the rights of an adopted child under a will, the controlling question is not whether the adopted child would inherit from its adoptive parent under the statute of succession, but whether the adopted child is included among the persons the testator intended to share in his estate. (*Puterbaugh's Estate*, 261 Pa. 235, 241 [104 A. 601, 5 A.L.R. 1277]; *Comer* v. *Comer*, 195 Ga. 79 [23 S.E.2d 420, 424, 144 A.L.R. 664]; see 1 Am.Jur. 665.)

 Section 108 of the Probate Court provides: ''A testamentary disposition to 'heirs,' 'relations,' 'nearest relations,' 'representatives,' 'legal representatives,' 'personal representatives,' 'family,' 'nearest (or next) of kin' of any person, without other words of qualification, . . . vests the property of such person, according to the provisions of Division II of this code. . . .'' Before its amendment in 1931 this section also included the term ''issue.'' This amendment clearly indicates that the statute of succession was not to

control the interpretation of the term "issue" as used in a will. When statutes like section 108 are not applicable, the rules of intestate succession apply only if the testator expresses an intention in the will to adopt such rules. (See *Estate of Watts,* 179 Cal. 20, 22 [175 P. 415].)

Respondent also relies on *Estate of Moore,* 7 Cal.App. 2d 722, 724 [47 P.2d 533, 48 P.2d 28], *Estate of Tibbetts,* 48 Cal.App.2d 177, 178 [119 P.2d 368], and *Estate of Esposito,* 57 Cal.App.2d 859, 865 [135 P.2d 167], holding that adopted children are "lineal descendants" within the meaning of section 92 of the Probate Code, which prevents the lapse of a testamentary devise or bequest to kindred, if the devisee or legatee predeceases the testator but leaves lineal descendants surviving the testator. Although a beneficiary takes directly under the will of the testator under such an anti-lapse statute, he does so because the statute substitutes him for the predeceased devisee or legatee. He takes, not by virtue of the expressed intentions of the testator, but solely by virtue of the statute. Section 228 of the Civil Code compels the result in these cases as it does in the succession cases. As stated in *Estate of Moore (supra,* at 724) : "The law applicable to the present controversy and creating the status is found in section 228 of the Civil Code providing that 'after adoption the two shall sustain towards each other the legal relation of parent and child, and have all the rights and be subject to all the duties of that relation.' . . . That such adopted child is to be considered as 'issue' and a lineal descendant of the adopting parent, has been on several occasions recognized by our courts. . . . To exclude adopted children from its scope would be to say that they are not entitled as to the adopting parent, to the full rights of natural children, which is contrary to the express provision of the statute."

 In construing the statutes of succession and the anti-lapse statute, the courts were concerned primarily with carrying out the intention of the Legislature (Civ. Code, § 228) that adopted children be given the same rights under the statutes of this state as those enjoyed by natural children. (See, also, *Estate of Winchester,* 140 Cal. 468, 469 [74 P. 10].) These statutes and the cases thereunder, however, unlike section 108 of the Probate Code, do not purport to prescribe a standard meaning for the terms "lineal descendant" or "lawful issue" as used in wills or other private instruments, and are therefore not controlling in the interpretation of wills or other private instruments.

█ The question whether an adopted child is included within the meaning of "lawful issue" as used in a will usually turns on the particular circumstances of each case. Thus the meaning of "lawful issue" has been determined from the general scheme or purpose of a will considered as a whole (*Middletown Trust Co.* v. *Gaffey*, 96 Conn. 61, 69 [112 A. 689]; *Mooney* v. *Tolles*, 111 Conn. 1, 11 [149 A. 515, 70 A.L.R. 608]; *New York Life Ins. & Trust Co.* v. *Viele*, 161 N.Y. 11, 20 [55 N.E. 311, 76 Am.St.Rep. 238]; *Comer* v. *Comer, supra,* 195 Ga. 79 [23 S.E.2d 420, 424, 144 A.L.R. 664]; *Woods* v. *Crump,* 283 Ky. 675, 681 [142 S.W.2d 680]), or from the fact that the testator used different terms such as heirs, issue, and children interchangeably to identify the same persons (*Hall* v. *Crandall,* 25 Del.Ch. 339 [20 A.2d 545, 547]; *Smith* v. *Thomas,* 317 Ill. 150, 158-159 [147 N.E. 788]; *Cook* v. *Underwood,* 209 Iowa 641, 644 [228 N.W. 629]; see *Everitt* v. *La Speyre,* 195 Ga. 377 [24 S.E.2d 381, 384]). Moreover, the meaning of the term has frequently been determined by the circumstances surrounding the execution of the will, such as the testator's knowledge of the adoption and his approval or disapproval thereof (*Ansonia Nat. Bank* v. *Kunkel,* 105 Conn. 744, 748 [136 A. 588]; *Middletown Trust Co.* v. *Gaffey, supra,* 96 Conn. 61, 71; *Munie* v. *Gruenewald,* 289 Ill. 468, 472 [124 N.E. 605]; *In re McEwan,* 128 N.J.Eq. 140, 147 [15 A.2d 340]; *Trowbridge* v. *Trowbridge,* 127 Conn. 469, 474-475 [17 A.2d 517]; see notes, 70 A.L.R. 621, 144 A.L.R. 670), or the testator's knowledge of the inability of persons, whose "issue" are provided for in the will, to bear children. (*Ansonia Nat. Bank* v. *Kunkel, supra,* 753; *Beck* v. *Dickinson,* 99 Ind.App. 463, 466 [192 N.E. 899]; see *Bray* v. *Miles,* 23 Ind.App. 432 [54 N.E. 446, 55 N.E. 510].) "Since the language of different wills is so varied and the circumstances surrounding the testators are so different, decisions in will construction cases are of less value as guides or authority than is the case in almost any other branch of the law. . . . each will must be construed in the light of its own particular phraseology and the facts and circumstances surrounding the testator at the time of its execution." (Thompson on Wills (3d ed.), pp. 324-325.)

█ The circumstances preceding the execution of the will in the present case indicate that the testator intended to use "lawful issue" in its ordinary meaning as offspring of parentage (3 Page on Wills 152; cases collected in 117 A.L.R.

691) to exclude adopted children. At the trial there was introduced into evidence the testimony of Edna Dyer Pierce, the widow of the testator, who testified to an oral conversation that took place in the presence of the testator and to other circumstances that occurred before the making of the will. The widow testified that at a time before the execution of the will she had a conversation with the testator in the presence of a nephew relating to the plans of Harry A. Pierce to adopt Iola Ann, who at that time was approximately 2 years of age; that during the conversation the nephew had informed the testator of the contemplated adoption and the testator then said: "If God spares my life until tomorrow, and I can get down to my bank, I am going to disinherit Harry"; that Harry, being informed of the testator's state of mind, promised him that he would not adopt Iola Ann or Dolores Amelia; that the testator destroyed a will that he had executed for the very purpose of disinheriting Harry. The disinheriting will, which was torn and thrown into a wastebasket, was retrieved by the widow and preserved; this document was introduced into evidence at the trial. Edna Dyer Pierce further testified that one of the reasons that the testator did not like these minor children was the fact that the husband of the mother of the children stated to the testator that he was not the father of the second child, since he was in jail at the time the child was conceived and could not have been the father. This was the only evidence received at the trial relating to the construction of the language of the will.

Section 105 of the Probate Code provides: "When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations." If the terms of the will are unambiguous and are susceptible of only one meaning the intent of the testator must be gathered from the face of the instrument itself. (*Estate of Watts, supra,* 179 Cal. 20, 23; *Estate of Soulie,* 72 Cal. App.2d 332, 335 [164 P.2d 565]; *Estate of Owens,* 62 Cal. App.2d 772, 774 [145 P.2d 376]; *Vincent* v. *Security-First*

*Nat. Bank,* 67 Cal.App.2d 602, 610 [155 P.2d 63].) This will, however, is not clear on its face. ■ The testator used "lawful issue" to qualify or restrict the meaning of children or grandchildren. As a layman using the words "lawful issue" in a holographic will he may have intended to distinguish legitimate from illegitimate children, adopted from natural children, legitimate children of the blood of the testator from adopted or illegitimate children, or he may have intended to include children of his legatees that they regard as their lawful issue. In view of the uncertainty appearing on the face of the will, it was proper for the trial court to admit evidence of the circumstances preceding the execution of the instrument to determine what the testator meant by "children *(lawful issue)*" in the first provision quoted above, and by "grandchildren being the *lawful issue*" in the second provision quoted above.

■ Respondent contends that the extrinsic evidence was inadmissible on the ground that it was too remote from the date of the execution of the will. That contention, however, relates to the probative value to be given such evidence, not to its admissibility. It cannot be seriously contended that such evidence was not sufficiently relevant to the testator's attitude toward the adopted children. (*Trowbridge* v. *Trowbridge, supra,* 127 Conn. 469, 471; *Munie* v. *Gruenewald, supra,* 298 Ill. 468, 472; see *Beck* v. *Dickinson, supra,* 99 Ind.App. 463.) ■ In any event, since the respondent interposed only a general objection to the admission of the testimony of the widow, the question of its admissibility on the specific ground of remoteness cannot now be considered on appeal. It is well settled that when a general objection to the admission of certain evidence is overruled by the trial court, the party against whom the ruling is made cannot raise for the first time on appeal a specific objection thereto, unless the evidence is not admissible for any purpose. (*Crocker* v. *Carpenter,* 98 Cal. 418, 421 [33 P. 271]; *Christiansen* v. *Hollings,* 44 Cal.App.2d 332, 340 [112 P.2d 723]; *Gularte* v. *Martins,* 65 Cal.App.2d 817, 821 [151 P.2d 570].)

■ The circumstances under which the will was executed may relate to events occurring before its execution, if they have relevance concerning the intention of the testator at the time the will was executed. (See Thompson on Wills *supra,* at p. 488.) Accordingly, in several California cases

circumstances existing years before the execution of a will have been considered in the interpretation of wills to determine the testator's intentions as they existed at the time of the execution of the will. (*Estate of Dominici,* 151 Cal. 181, 188 [90 P. 448]; *Estate of Mitchell,* 160 Cal. 618, 623 [117 P. 774]; *Estate of Hotaling,* 72 Cal.App.2d 848 [165 P.2d 681]; *Estate of Johnson,* 107 Cal.App. 236, 239 [290 P.314]; *Estate of Wierzbicky,* 69 Cal.App.2d 690, 693 [159 P.2d. 699].)

Although section 105 of the Probate Code clearly permits the introduction of evidence of circumstances surrounding the execution of a will, when there is an uncertainty on the face of the will as to the application of any of its provisions, it specifically provides that oral declarations of the testator cannot be considered to determine his intentions. This section has been construed, however, not to exclude oral declarations that consist of instructions to a scrivener. (*Estate of Dominici, supra,* 151 Cal. 181; *Estate of Little,* 170 Cal. 52 [148 P. 194]; *Estate of Donnellan,* 164 Cal. 14 [127 P. 166]; *Estate of Hotaling, supra,* 72 Cal.App.2d 848, 856.) The testator's statements relating to the disinheritance of Harry A. Pierce were not instructions to a scrivener and therefore do not come within this exception. (See *Estate of Johnson, supra,* 107 Cal.App. 236, 240; *Estate of Maloney,* 27 Cal.App.2d 332, 335 [80 P.2d 998].)

There is sufficient evidence of circumstances before the execution of the will, exclusive of the testator's declarations, however, to support the conclusion that the testator intended to exclude adopted children from taking under the will. The uncontradicted testimony shows that the testator was opposed to the adoption of these children and that his opposition was manifested by the execution of a will disinheriting the adoptive parent; that the testator destroyed the disinheriting will on the promise of Harry A. Pierce that he would not adopt these children. This appeal is upon an agreed statement of facts, and therefore rule 52 of the Rules on Appeal is controlling: "If a record on appeal does not contain all of the papers, records and oral proceedings, but is certified by the judge or the clerk, or stipulated to by the parties, in accordance with these rules, it shall be presumed in the absence of proceedings or augmentation that it includes all matters material to a determination of the points on appeal." Thus, this court must

determine from this record alone whether there was any evidence to support the judgment of the trial court. (See *Alkus* v. *Johnson-Pacific Co.*, 80 Cal. App.2d 1, 8 [181 P.2d 72, 76].) Since the only evidence in the agreed statement shows that the testator did not intend that the adopted children should take under the will, there is no evidence to support the order of the trial court.

The order is reversed.

Gibson, C. J., Shenk, J., Edmonds, J., and Spence, J., concurred.

CARTER, J.—I dissent.

I am convinced that the order of the trial court holding that the testator intended the adopted children of the annuitants to be included in the term "children, lawful issue" should be affirmed.

The general rule is that the findings of a trial court should be liberally construed and any inconsistency therein so resolved as to uphold rather than defeat its judgment. (*Woodbine* v. *Van Horn*, 29 Cal.2d 95, 109 [173 P.2d 17]; *Menghetti* v. *Dillon*, 10 Cal.2d 470, 472 [75 P.2d 596]; *Ensele* v. *Jolley*, 188 Cal. 297, 303 [204 P. 1085]; *Murray* v. *Tulare Irrigation Co.*, 120 Cal. 311, 315 [49 P. 563, 52 P. 586]; *Bell* v. *Scudder*, 78 Cal.App.2d 448, 457 [177 P.2d 796].) In this case, by giving a liberal construction to the findings of the trial court, its order can, and should, be affirmed on the following grounds: (1) That the trial court realized the error it committed by first holding that there was an ambiguity in the will in the use of the phrase "lawful issue"; (2) That the trial court, in accord with the general rule, disregarded evidence erroneously admitted and cured its own error by finding against such evidence; (3) That the trial court refused to believe the evidence contrary to its findings.

The first and most basic question is whether there is present in the will here involved the condition precedent to the admission of extrinsic evidence: Ambiguity, or as the code puts it, "uncertainty." (Prob. Code, § 105.) Without such uncertainty, extrinsic evidence of any kind is inadmissible for the purpose of determining the intent of the testator.

In this case, the trial court originally held that there was an ambiguity, and therefore admitted the evidence. But on

further consideration, the court may very well have come to the conclusion that it had erred. If no "uncertainty" existed, the matter became one purely of law for the court to decide. The evidence could be disregarded. Here, the evidence *was* obviously disregarded. There is a logical explanation for this disregard. No prejudice can result to any one if the court, after making an error in receiving evidence, realizes the error and cures it by giving the document before it the interpretation it should have received from the start.

Construing the language used in the will under California law as required by Probate Code, section 100, it was entirely reasonable for the trial court to conclude that the testator had in fact *not* intended to exclude the adopted children of the various annuitants by the use of. the term "children, lawful issue." This interpretation should be permitted to stand. It is not only reasonable but also in line with the general trend expressed in statutes and cases in this state under which the status of an adopted child is approximated as closely as possible to that of a natural child.

In this connection, it may be conceded that up to this time, the California cases and statutes involved only questions of succession and pretermission rather than the interpretation of documents. The trend in favor of adopted children is nevertheless clear and so is the rule:

"[T]he rule is well settled that where the construction given to an instrument by a trial court is reasonable and appears to be consistent with the intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation, even though it may seem equally tenable with that accorded by the trial court." (*Estate of Northcutt*, 16 Cal.2d 683, 690 [107 P.2d 607], and cases there cited.)

Under this reasoning, the trial court was bound to disregard the extrinsic evidence and had to determine the intention of the testator on the basis of the words used in the will itself in accordance with section 105 of the Probate Code. The alleged disregard of the evidence was therefore entirely proper and did not constitute error.

The decision of the trial court receives further support from the following rule:

". . . that where by the terms of the will it is not made clear nor certain that an intestacy—whether partial or total

—was intended, an interpretation which will avoid intestacy will be adopted.'' (*Estate of Northcutt,* 16 Cal.2d 683, 689 [107 P.2d 607], and many cases there cited.)

In this case, there would unquestionably be an intestacy if respondents are excluded. There is not the slightest indication of an intent to create such an intestacy in the will. The trial court therefore correctly concluded that the respondents were intended to take under the will.

Next, if it is conceded for the sake of argument that the use of the term ''lawful issue'' in the will created an uncertainty within the meaning of section 105 of the Probate Code, the oral declarations of the testator are still inadmissible under that same section. The majority opinion recognizes that rule but accords it lip service only.

The evidence contained in the agreed statement of facts shows that respondents' counsel made immediate objection to the admission of declarations of the testator. The objection was general as well as specific and stated the rule laid down in section 105 of the Probate Code. The following excerpt from .the agreed statement of facts shows that the trial court misunderstood counsel for appellants:

''Mr. Shelton: We are offering this testimony as to the facts and circumstances surrounding the man at the time when the will was executed and the facts thereto so as to make the court conversant with them.

''The Court: You are not seeking by this witness to introduce any statement of the testator with reference to this language?

''Mr. Shelton: Yes, directly bearing on that *in declarations* that he had no intention . . .''

The trial court then overruled the objection, evidently thinking that the declarations of the testator would not be introduced. The question asked by the trial court showed that it was aware of the rule under which such declarations would not be admissible. Afterwards, when the inadmissibility of the evidence came to light, the trial court must have realized that it was subject to reversal if it rendered a decree based on inadmissible evidence. (*Fishbaugh* v. *Fishbaugh,* 15 Cal.2d 445, 457 [101 P.2d 1084].) Under those circumstances, it was the duty of the trial court to disregard the inadmissible portion of the evidence. On appeal, it is presumed that the trial court disregards inadmissible evidence which has crept into the record,

"In general, it will be assumed on appeal, where the case is tried by the court without a jury, that the court considered only proper and competent evidence in making its findings and did not consider other evidence which has been admitted erroneously and it will be presumed that such evidence was disregarded." (5 C.J.S. 405.) The same general rule is stated in almost identical words in 3 American Jurisprudence at page 505 and is supported by many cases. (*Bisno* v. *Herzberg*, 75 Cal.App.2d 235, 241 [170 P.2d 973]; *Cordi* v. *Garcia*, 56 Cal.App.2d 584, 588 [132 P.2d 887]; *Farmers etc. Nat. Bank* v. *Stowell*, 6 Cal.App.2d 373, 378 [44 P.2d 392].)

Looking at the record in the light of this presumption, it is evident that the admissible portion of the evidence, that is, that portion which the trial court was under a duty to consider, shows nothing but the facts that the testator once made and tore up a will and that he became angry on one occasion. And while it may be conceded that this might have been enough evidence to support the conclusion of the trial court, had it concluded that the intention of the testator was to *exclude* the adopted children of the annuitants, the fact remains that it found to the contrary. Such evidence as was left certainly did not compel the trial court to find one way or the other. A torn will and an outburst of rage are equivocal acts, capable of any number of interpretations. It is axiomatic that under such circumstances the result reached by the trial court should not be disturbed.

Finally, if it is assumed that the words used in the will not only created an "uncertainty" but that the extrinsic evidence contained in the agreed statement of facts was admissible (and neither of these points is conceded), the trial court was still free to disbelieve the uncontradicted evidence of the only witness, and evidently did disbelieve it. In a recent case, when speaking of uncontradicted evidence, the majority of this court said: "But, of course, the trial court was not required to believe their testimony. The trial court is the exclusive judge of the weight of the evidence and the credibility of the witnesses. It is its province to give to the evidence that weight to which, in its judgment, it is entitled, and to draw all reasonable inferences therefrom, and if, in its judgment, the evidence is entitled to no weight it may disregard such evidence altogether. (24 Cal. Jur. 886, sec. 135.)" (*Campbell* v. *Birch*, 19 Cal.2d 778,

789 [122 P.2d 902].) The dissenting judges in this case concurred with the majority on the point mentioned. Page 803 of 19 Cal.2d: ". . . first that the trial court could have disbelieved defendants' evidence on the subject; and second that an inference . . . arose . . . With the first I agree, but . . ." (See, also, *Tretheway* v. *Tretheway*, 16 Cal.2d 133 [104 P.2d 1033].)

There can be no question but that the trial court in this case disregarded or disbelieved the evidence produced at the trial as to the testator's intention with respect to the adopted children. This the trial court obviously had the right to do. (*Estate of Bristol* (1943), 23 Cal.2d 221 [143 P.2d 689]; *Tretheway* v. *Tretheway* (1940), 16 Cal.2d 133 [104 P.2d 1033].)

In my opinion no ambiguity exists in the meaning of the words used. But if it is conceded that an uncertainty arose, whether some or all of the evidence was admissible or not, there is still a reasonable and logical explanation for the action taken by the trial court.

In a case of this nature, reflections of this kind are removed from the realm of conjecture by the presumption that the trial court acted in the proper discharge of its office and did not reach an arbitrary result. The cases cited *supra*, show that this court has often recognized the necessity for liberal construction in order to sustain rather than reverse a trial court. The rule that the trial court is presumed to disregard inadmissible evidence in the record is in line with this general principle. In this case, the majority opinion usurps the function of the trial court and reverses it where, under the settled rules above outlined, it could and should be affirmed.

Schauer, J., concurred.