[Civ. No. 8652. First Appellate District, Division Two.—October 13, 1932.]

SPRING STREET REALTY COMPANY (a Corporation), Respondent, v. VICTORIA H. TRASK, Appellant.

Chapman and Chapman for Appellant.

Bauer, MacDonald, Schultheis & Pettit and Fred E. Pettit, Jr., for Respondent.

STURTEVANT, J.—From a judgment in favor of the plaintiff in an action brought to obtain declaratory relief the defendant has appealed.

In 1923 the defendant was the owner of a lot on the west side of South Spring Street in Los Angeles. She entered into a ninety-nine year lease. The lease was assigned to the plaintiff. As lessee the plaintiff erected a twelve-story steel frame class "A" building on the lot. The building is known as the California Bank Building. In 1930 the plaintiff purchased the lot on the north and commenced to erect another building of the same type but which is more modern and of a more perfect structure than the bank building. The building was so constructed that in many respects it is a counterpart of the bank building. At least in part the levels of the floors and the location and size of the corridors coincide if the same are extended. Some of the plaintiff's tenants have demanded additional space. To meet those demands it has become advisable for the plaintiff to cut doors through some of the walls so that the tenants making such demands can be given the additional space. The openings, if made, will be cut through the fillers but not through nor into the supports of the structure of either building. The plaintiff claims the right to make the changes and the defendant vigorously controverts that claim. In framing its pleading the plaintiff inserted numerous allegations as to the facts, its intentions, and by reference pleaded the lease *in haec verba*. The defendant filed an answer containing many denials and pleading many affirmative matters. The trial court made findings that are very full and complete and in general found the facts as alleged in the plaintiff's complaint.

The defendant asserts that the lessee may not without the consent of the lessor make material changes or alterations in the building to suit its taste or convenience. The plaintiff replies that it does not claim to the contrary,

but it asserts that by the express provisions of the lease it has the right to make the contemplated changes. Thereupon it quotes from article III, section (8) of the lease the following covenants: ''After the completion of the building, the Lessees, providing they shall not be delinquent or in default of any of the obligations imposed upon them by this lease, to be by them kept and performed, shall have the right to make, at their own cost and expense, any alterations or repairs or improvements to the same building, providing they do not in any way change the general character and construction of the building, or violate any of the provisions contained in the specifications therefor, or the requirements of sub-paragraphs a, b and c of paragraph 1 of Article III hereof.'' The plaintiff's position is strengthened by a consideration of other portions of the lease. There were inserted many passages to the effect that the defendant should be held harmless from mechanics' liens based on alterations and improvements to be made during the term of the lease. These passages show that both parties contemplated that substantial changes in the nature of alterations and improvements might be made during the term of the lease. The lease also provides for the forfeiture of the estate of the lessee on the happening of certain contingencies. Such forfeitures are numerous; however, no such provision is inserted regarding alterations or improvements made by the lessee. The reversion clause is that at the termination of the lease ''the building and improvements thereon shall be delivered to the lessor in good condition and repair, reasonable wear and tear and damages by the elements excepted''. This clause also clearly contemplated that ''improvements'' might be added to the building after it was constructed. ■ By the clear terms of the lease the plaintiff was to have the power to let and sublet It contains no covenants to the contrary, therefore the lessee had those rights. (35 C. J. 977.) In subletting it might become necessary to insert partitions or to cut doors. The power to let and sublet was therefore to be taken into consideration in determining the plaintiff's rights in the instant case. (*Klein's Rapid Shoe Repair Co.* v. *Sheppardel R. Co.*, 136 Misc. Rep. 332 [241 N. Y. Supp. 153, 155]; *Mayer* v. *Texas Tire & Rubber Co.*, (Tex. Civ. App.)

223 S. W. 874.) In the light of all of these provisions we think that the contention of the plaintiff is clearly correct.

The trial court made its findings in favor of the plaintiff in the language of the lease. The defendant now asserts that those findings are conclusions. We think not. They were the ultimate facts. To prove those ultimate facts the plaintiff introduced much evidence to which there was no legal objection.

It is asserted that connecting the two buildings by the opening of the passageways as authorized by the decree in this case would violate the prohibition against the making of any alteration, repairs or improvements which may in any way change the general character and construction of the building. The bank building was constructed as an office building. The new building was also constructed as an office building. Nothing indicates that the character of the bank building has been changed. On this point the trial court found all of the facts against the defendant.

In her argument the defendant continues by specifying nine different instances wherein, as she claims, the changes will violate the terms of the lease.

(1) She claims that the structure on the leased premises is the property of the lessor. The court found against her and in accordance with the clear recital contained in the lease.

(2) She claims it is not possible that the parties had in mind the connecting up of this building with any adjacent building when the lease was made. The court found the fact against her.

(3) and (5) In these two points the defendant asserts in different language that the leased premises will lose their identity if the changes are made. The trial court heard the testimony and found the facts against the defendant.

(4) The defendant asserts that the combining of the two buildings will work a radical change in the general character of the California Bank Building. That building was erected as an office building. When the changes are made it will be of the same character—the only difference being that it may be said to have an annex. The court found the facts against the defendant.

The defendant contends that by connecting the buildings the wear and tear upon defendant's building is surely

substantially increased. Of course, it can be seen how it may be increased and it may be seen how it may be decreased. The court found the facts against the defendant.

(7) and (8) The defendant asserts that making leases to tenants of space in both buildings will work a hardship on the defendant and will make a radical change regarding the marketable value of defendant's property. Neither subject was tendered as an issue by the pleadings nor by the proof.

The defendant asserts that the changes will increase the fire risk and raise the insurance rates and she argues, therefore, that such fact establishes that the general character of the building will be changed. We are not prepared to go to such lengths. Many little changes in a building will affect the rates as to fire insurance, but it does not follow that the character of the building is thereby changed. Moreover, as stated by the plaintiff, the amount of the fire rate is an immaterial issue in this case. By the terms of the lease the insurance to be taken out rests with the plaintiff and the burden of paying for the insurance rests on it.

It is also asserted by the defendant that the changes will be in violation of the specifications of the bank building. An examination of those portions of the specifications which have been brought up discloses that the change will have no such effect. In this connection the defendant makes the claim that the word "specifications", as used in the lease, means the same as "plans and specifications". It is not necessary for us to determine whether it does or not. The plans have not been inserted in the record. No part of the record is quoted showing to us that the changes will in any manner conflict with either the plans or the specifications or both. Moreover, if the plans and specifications are to be taken as the measuring rod it would follow that the plaintiff may not even change the lock on a door. But it will not lightly be assumed that the framers of a lease for a term of ninety-nine years of a twelve-story office building ever intended to place on the lessee such extreme limitations.

In other words the case as presented to the trial court involved two different kinds of questions. In the first place the trial court was bound to ascertain the right and powers of the plaintiff. That involved primarily a construction of the lease, and was a question of law addressed to the

trial court. In the second place the trial court was bound to ascertain the physical changes the plaintiff desired to make and how those changes were to be effected. The latter questions were solely questions of fact. The defendant's briefs have not attempted to show us that the trial court erred in construing the contract. As we have shown above, the briefs are largely devoted to attacks on questions of fact which have been found against the defendant by the trial court.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 12, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 12, 1932.