[Civ. No. 13339.   First Dist., Div. One.   May 27, 1947.]

IRVING N. ALKUS et al., Appellants, v. JOHNSON-PACIFIC CO. (a Corporation), Respondent.

(1)

McKee, Tasheira & Wahrhaftig, Ridley Stone and J. D. Cooper for Appellants.

Appelbaum & Mitchell and John Jewett Earle for Respondent.

BRAY, J.—Appeal by plaintiffs on the judgment roll alone in an action for declaratory relief from a judgment decreeing that "defendant is not liable [to plaintiffs] under the terms or provisions of the lease between the parties hereto for the cost of utilities furnished to the United States Government."

The case arises out of the following facts: Capital Company, a corporation, owned real property in Oakland upon which was a building, a portion of which it had leased to the United States Government, on a year to year basis, the lease to extend in no event further than six months after the date when the President should declare the termination of the national war emergency. Appellants purchased the property from the Capital Company and received an assignment of the lessor's interest in the lease with the government. After purchasing the property appellants entered into a supplemental agreement with the government, increasing the area leased and the rental to be paid. Under the lease as modified, the government was paying appellants a rental of $435 per month. One of the provisions of this lease required the lessor to furnish to the government "Elevator service, including right of ingress and egress to the freight elevator and stairway, *and adequate water and electricity twelve (12) hours per day.*" (Emphasis added.)

Thereafter, appellants leased the entire property to respondent, for a term of five years at a total rental of $90,000, payable in graduated monthly installments. This lease was made expressly subject to the government lease. Paragraph 31 of the lease to respondent provided: "This lease is made subject to the present occupancy of the top floor of the demised premises and a portion of the first floor, by the United States Army, together with the right of ingress and egress, on a month to month tenancy, at a present rental of $435.00 per month, which rental shall go to and may be collected by the Lessee; or, which rental if paid by the Army to the Lessor, shall be credited and applied upon the rental provided hereunder." Paragraph 15 provided: "Lessee agrees to pay for all the water, fuel, gas, oil, heat, electricity, power, materials and services which may be furnished to or used in or about said premises during the term of this lease and to keep the same free and clear of any lien or incumbrance of any kind whatsoever created by Lessee's acts or omissions."

On November 15, 1944, respondent took possession under the lease, the Army remaining, however, in possession of the

portion leased to the government. At and prior to its execution of the lease, respondent did not have knowledge of the terms of the lease to the United States other than the information given in paragraph 31 above quoted, or of the provision in the government's lease requiring the lessor to supply, among other things, water and electricity.

After respondent took possession, the government continued to pay appellants the $435 monthly rental, which rental appellants applied on the rentals payable by respondent. Also, appellants paid the utility bills for the services rendered to the government. Respondent, when requested by appellants so to do, refused to reimburse appellants for the amounts so paid. A controversy arose from appellants' claim that respondent, under its lease, was required to pay the cost of the utilities furnished to the government and respondent's refusal to acknowledge that claim. This suit was then brought by appellants for declaratory relief to determine whether respondent is obligated to pay for such utilities. The court found the facts above set forth, and that under the terms of its lease respondent is not liable for the cost of the utilities furnished the government.

Appellants contend that the findings do not support the judgment, because (1) the finding of nonliability is not a true finding of fact, but a conclusion of law, and the other findings do not support a conclusion of nonliability; (2) if the finding of nonliability is a finding of fact and not a conclusion of law, it is merely a summing up of the other facts found, and as such is contradicted by the other findings and not supported by them; and (3) in no event do the findings support the judgment. Another way of putting it, is that except for the finding of nonliability, appellants' claim that there is nothing in the findings which justifies an interpretation of the lease other than appears on its face, namely, the liability of respondent to pay for the utilities supplied the government.

The court, with some few minor exceptions, found the allegations of each paragraph of plaintiffs' complaint were true and correct. It is not necessary to set the findings forth here. Only the portions pertinent to the contentions here will be mentioned. The main controversy on the appeal centers upon the following finding: "IV. . . . and the Court finds that the defendant is not liable under the terms or provisions of the lease between the parties hereto for the cost of utilities fur-

nished to the United States Government pursuant to paragraph 6 of the said lease referred to in paragraph VI of the complaint, and that whatever expense was incurred by the plaintiffs herein for the payment of said electricity, water or other utilities was the obligation of said plaintiffs and defendant herein is not obligated to reimburse plaintiffs herein for the same." Without this finding there is no support for the judgment, unless the lease can be interpreted as a matter of law contrary to appellants' contention, as there is nothing in the rest of the findings to vary the terms of the lease as as they appear on its face.

It is this finding which appellants contend is not a finding of fact but a conclusion of law. As support for their contention appellants cite *Weidenmueller* v. *Stearns Ranchos Co.*, 128 Cal. 623 [61 P. 374], which holds to the contrary, as the court there held (p. 625) that a finding that "plaintiff had no prescriptive or other right to receive water from said canal at any other level than the bottom . . ." was a finding of fact and not a conclusion of law. It quotes the rule set forth in *Levins* v. *Rovegno,* 71 Cal. 273, 275, 278 [12 P. 161] : "The line of demarkation between what are questions of fact and conclusions of law is not one easy to be drawn in all cases. . . . If, from the facts in evidence, the result can be reached by that process of natural reasoning adopted in the investigation of truth, it becomes an ultimate fact, to be found as such. If, on the other hand, resort must be had to the artificial processes of the law, in order to reach a final determination, the result is a conclusion of law." *Anglo-California Trust Co.* v. *Collins,* 192 Cal. 315 [219 P. 982], held that where there was no express finding in the findings of fact on the question of damages a finding in the conclusion of law "that the plaintiff is not entitled to recover any damages" was a conclusion of law and not a finding of fact. Therefore the findings did not support the judgment. Actually, the decision was based more on the fact that "In any view of the case, the judgment under the findings is inadequate to compensate the plaintiff" than on the question of whether or not this particular finding was a finding of fact or a conclusion of law.

*Robinson* v. *Raquet,* 1 Cal.App.2d 533 [36 P.2d 821], held that a statement in the findings of fact that "it is not true that plaintiff has been damaged" etc., was a conclusion of law and not a finding of fact. While there are other cases in Cali-

fornia which hold, as the Robinson case, that such matters are conclusions of law rather than findings of ultimate facts, the majority of the cases hold to the contrary. The more prevalent rule is to hold these matters as findings of fact, and not to upset judgments on mere technical determinations as to fine distinctions between ultimate facts and conclusions. Even as far back as *Daly* v. *Sorocco,* 80 Cal. 367 [22 P. 211], "that the plaintiff was not the owner" was held to be a finding of fact. Other statements held to be findings of fact are as follows: "That plaintiff did not rescind said sales . . ." (*Hollenbach* v. *Schnabel,* 101 Cal. 312 [35 P. 872, 40 Am.St. Rep. 57]. "That Elizabeth Zink has 'no right, title, interest, claim, or *lien* of, in or to or against any of the land or premises. . . ." (*Dam* v. *Zink,* 112 Cal. 91, 93 [44 P. 331].) *Spring Street Realty Co.* v. *Trask,* 126 Cal.App. 765 [15 P.2d 195], was a suit brought for declaratory relief in the interpretation of a lease. "The trial court made its findings in favor of the plaintiff in the language of the lease. The defendant now asserts that those findings are conclusions. We think not. They were the ultimate facts." (P. 769.) A finding that plaintiffs cancelled a sales contract because of its violation by defendants, and that it was not true that plaintiffs have failed and refused to pay defendants any commissions due "in the manner provided in the said contract" was held to be a finding of fact. (*Palmer* v. *Fix,* 104 Cal.App. 562, 567 [286 P. 498].) In this case the court refers to *Butler* v. *Agnew,* 9 Cal.App. 327, 330 [99 P. 395], to the effect "that in case of a doubt as to which class the findings belong, the doubt should be resolved in favor of the judgment." (P. 568.) A determination that the property in question is community property rather than separate property (*Estate of Woods,* 23 Cal.App.2d 187 [72 P.2d 258]); a finding that a guaranty was not supported by any consideration (*Rusk* v. *Johnston,* 18 Cal.App.2d 408 [63 P.2d 1167]); a finding that there has been no material change in circumstances, and that it is for the best interests of the child that it be returned to the care and custody of its father (*Jordan* v. *Jordan,* 58 Cal.App.2d 371 [135 P.2d 416]), were held to be findings of fact. See other cases listed in 24 California Jurisprudence 927, and 53 American Jurisprudence 786. And, of course, allegations of negligence and contributory negligence have long been held to be allegations of ultimate facts and not conclusions of law.

The ultimate fact which the court below was called upon to determine was whether or not respondent was obligated under the terms of the lease to pay for the public utilities furnished the Army. It was the only disputed issue before the court.

Appellants' second contention is the exceedingly narrow one that, assuming paragraph IV to be a finding of fact, it shows on its face that it is merely a summation of the preceding findings and as the preceding findings merely find the written terms of the contract there is no basis for finding IV, which is contrary to the terms of the contract. On this point appellants rely upon three cases: (1) *Geer* v. *Sibley*, 83 Cal. 1 [23 P. 220]. In that case the court made a finding expressly stating that it was based on the preceding findings. "From the foregoing facts" the court made the finding objected to, and which the higher court held was not supported by the "foregoing facts." (2) In *People* v. *Reed*, 81 Cal. 70, 76 [22 P. 474, 15 Am.St.Rep. 32], the contested finding states that "by the acts, facts, and matters above found" the premises were dedicated as public streets. The higher court held that the acts, facts and matters upon which that finding was based did not support it. The third case, *Noble* v. *Beach*, 21 Cal.2d 91 [130 P.2d 426], does not give the exact wording of the finding in question, but does hold that the probative facts found would not justify this finding as an ultimate fact. These cases all depend upon the particular language of the findings.

Appellants contend that the language used by the court, "under the terms or provisions of the lease," shows that the court was summing up the preceding findings. This does not necessarily follow. The form of the finding here is quite similar to the form of the finding in *Transportation Guar. Co.* v. *Jellins*, 29 Cal.2d 242 [174 P.2d 625]. There the court found that "in and by said contract 136, plaintiff agreed" to keep a certain truck insured. Whether or not the contract required plaintiff to keep that truck insured was the main issue in the case. The Supreme Court upheld the finding.

An examination of finding IV reveals no basis for holding that it is a summation of the preceding findings, unless rule 52, Rules on Appeal, applies to this appeal. So it becomes necessary to consider this rule, for that reason, and also in connection with appellants' third point, namely, that in no event do the findings support the judgment. This is a most serious question. The interpretation of the lease in

this case depends upon which rule we follow. If the rule as set forth in innumerable cases and last cited in *Transportation Guar. Co.* v. *Jellins, supra,* 29 Cal.2d 242, namely, "on a judgment roll appeal it will be presumed that all evidence necessary to support the findings was received" (p. 245), applies here, then, as it is possible that the word "rental" under certain circumstances might mean "net rental," this court must presume that there was parol evidence introduced in the lower court which showed that the word "rental" as used in paragraph 31 of the lease was intended to mean "net rental" after deduction of cost of the utilities. On the other hand, if rule 52 applies, then we must presume that the judgment roll contains everything that was before the court on the subject, and the meaning of the lease must be determined solely from an examination of its terms.

■ For the reasons hereinafter set forth, we are applying rule 52 to this appeal. Therefore, this court must presume that the judgment roll "includes all matters material to a determination of the points on appeal." ■ These findings, without the aid of the old presumptions, merely find, so far as the question here is concerned, that the parties entered into the lease, the important clauses of which provide, "This lease is made subject to the present occupancy . . . by the United States Army . . . at a present rental of $435.00 per month, . . ." "Lessee agrees to pay for all the water, fuel, gas, oil, heat, electricity, power, materials and services *which may be furnished to or used in or about said premises,* . . ." and that the lease with the Army provides, "The Lessor shall furnish to the Government, *as part of the rental consideration,* . . . Elevator service . . . *and adequate water and electricity.* . . ." (Emphasis added.) A mere reading of these clauses can bring but one conclusion, namely, that respondent, as a part of the rental consideration, agreed to provide the utilities for the building, including the Army's portion, and that appellants were to receive from the Army the sum of $435 per month—no more, no less.

The utilities provision is not restricted to utilities used by the respondent. It expressly applies to all utilities used in the buildings or premises. There is nothing ambiguous about the terms in the lease; they are in plain, simple English. The fact that respondent did not know of the exact terms of the lease to the government, is immaterial. It leased the *entire* premises and not just the portion it was to occupy physically. The words of the contract can be given no other

reasonable interpretation than that they mean just what they say.

If the court interpreted the lease upon its terms alone, plus the fact that the respondent did not know of the terms of the government lease (and we must assume that the court did just that), then the court erred. The finding of non-liability has no support in the record and is irreconcilable with the findings which set up the terms of the two leases. The respondent is liable under the terms of its lease for the utilities supplied. The word "rental" as used in the lease here, particularly in connection with the paragraph providing that respondent will pay for the utilities "used in or about said premises" is clear and unambiguous. But if there is an ambiguity in the lease caused by paragraphs 15 and 31, as contended by respondent, it is not such an ambiguity as can be interpreted by an examination of the lease alone. It would require parol evidence to determine it, and here there is none. Again, if there is any uncertainty on the face of the lease as to whether the rental paid by the government is net or gross, the terms of the lease itself would necessarily imply that it was a gross rental, and any interpretation of it to mean net rental could only be by parol evidence. On the record alone, without evidence, sections 1649 and 1654 of the Civil Code cannot be applied. It would be straining the word a long way to hold that where a lease says that respondent is to receive or get credit for a "rental" of $435 payable by the government, the word means "net rental."

Respondent refers to the portion of paragraph 15 of the lease which reads, "and to keep the same free and clear of any lien or incumbrance of any kind whatsoever *created by Lessee's acts or omissions*" (emphasis added by respondent), and contends that it justifies an interpretation that the utilities respondent is to pay for are only those used by respondent itself. It is rather difficult to follow such reasoning. By no stretch of interpretation can that clause be reasonably construed that way.

*Does Rule 52 Apply to Judgment Roll Appeals?*

This rule provides: "If a record on appeal does not contain all of the papers, records and oral proceedings, but is certified by the judge or the clerk, or stipulated to by the parties, in accordance with these rules, it shall be presumed in the absence of proceedings for augmentation that it includes all matters material to a determination of the points on appeal."

In order to determine its applicability to judgment roll appeals it is necessary to consider somewhat its history and purpose. For many years prior to the adoption of the new rules, most judges and lawyers, to say nothing of the laymen, had come to the conclusion that appeals in California were unwieldy, overburdensome, took too long and were unreasonably expensive. It was felt that something should be done to shorten the records, speed up the time, and reduce the expense of appeals; in short, to streamline our whole appeal system. It was with that end in view that in 1941, the Legislature granted to the Judicial Council the power to prescribe new rules for the practice and procedure on appeal, and required it to report to the 1943 Legislature the rules prescribed by it.

Section 961 of the Code of Civil Procedure provides: ''The Judicial Council shall have the power to prescribe by rules for the practice and procedure on appeal, and for the time and manner in which the records on such appeals shall be made up and filed, in all civil actions and proceedings in all courts of this State. The Judicial Council shall report the rules prescribed by it to the Legislature on or before March 31, 1943. The rules reported as aforesaid shall take effect on July 1, 1943, *and thereafter all laws in conflict therewith shall be of no further force or effect.''* Section 1247k of the Penal Code is to the same effect as to appeals in criminal cases. (Emphasis added.)

The Judicial Council, assisted by four other groups (see 17 So.Cal.L.Rev. 80 for detail of the assisting groups) proceeded at once to work out a set of rules as directed. It was a Herculean task in the short time assigned to it, and yet the rules as finally devised evidence an exceptionally fine piece of work. There were several drafts of rules made before final acceptance. In the next to the last draft certain methods of shortening the record had been adopted. (They are the methods now in effect and are referred to hereafter.) Upon the study of this draft, it became apparent that if lawyers were to be expected to use any of these short methods of appeal something would have to be done about the presumptions then in effect with reference to the record on appeal. There were two of these presumptions: (1) The one hereinbefore referred to, that where the entire proceedings in the lower court were not presented in the record on appeal and the findings of fact were *within the issues* pre-

sented by the pleadings, the appellate court would conclusively presume that there was evidence received below to fully support the findings. (2) That where the whole record was not brought up and the findings were *without the issues* made by the pleadings, the appellate court would conclusively presume that either by stipulation of the parties or otherwise, the matters contained in such findings had been made an issue in the lower court. In many instances these presumptions were actually contrary to the true fact.

It was obvious that if these presumptions were to continue in effect, there would be very few, if any, short record appeals. Any lawyer taking an appeal on such a record would be instantly met with the presumption that, as he had not brought up the entire record, the findings were supported by the omitted matter. To meet this situation rule 52 was adopted.

But, again, the question arose, suppose the appellant appeals on the judgment roll alone and claims that there is no evidence to support the findings and the respondent contends that there is such evidence: how can the respondent get that evidence before the reviewing court? Rule 5(f) was devised for that purpose. It reads: "Where the appellant has designated only the papers and records constituting the judgment roll and has not given notice to prepare a reporter's transcript, the judgment roll shall constitute the record on appeal, and the respondent may not require any addition thereto; provided, however, that on motion of the respondent the reviewing court may allow augmentation of the record whenever it is necessary to prevent a miscarriage of justice."

The draftsman's notes have this to say concerning rule 52 (Annotated Judicial Council Rules, p. 60): "New. Cross-references: Rules 4 and 5, partial transcript; Rule 6, agreed statement; Rule 7, settled statement; Rule 8, certification; Rule 26(a), excessive record; Rule 12, augmentation; Rules 33, 35(f), 36, records in criminal appeals. This rule is entirely new, and is contrary to the holdings of some decisions, but if the short records are to be used, some such rebuttable presumption is essential to protect the party appealing on less than the complete record."

One of the primary objectives of the new rules, and of almost all reforms and proposed reforms in appellate procedure, is the shortening of appellate records. The stacking up of massive transcripts containing thousands of pages of testimony and exhibits, much of it totally irrelevant to the

points raised on appeal, had long been the target of criticism by courts and lawyers alike, and many efforts were made to reduce the labors of court and counsel by eliminating irrelevant matters from the appellate record. Among these methods are the *partial reporter's transcript* (rule 4(a)), the *agreed statement* or *settled statement* covering only a portion of the proceedings (rules 6(a), 7(a)), and the *clerk's transcript* or judgment roll record (rule 5(f)).

Thus the use of one or more of these methods of shortening the record is invited and encouraged by the new rules; but they go much further than that. Rule 26(a) declares that "where any party shall have required in the typewritten or printed record on appeal the *inclusion of any matter not reasonably material to the determination of the appeal* ... the reviewing court may impose upon *offending attorneys or parties such penalties,* including the withholding or imposing of costs, as the circumstances of the case and the *discouragement of like conduct in the future may require."* (Emphasis added.)

The latter portion of the foregoing provision was taken directly from the new federal rules (Fed. Rules of Civ. Proc., rule 75(e)). Conceding that such a rule should be invoked rarely and with great caution (see draftsman's comment, 17 So.Cal.L.Rev. 102), nevertheless it stands in the rules as a warning to counsel that the courts are tired of huge transcripts full of immaterial evidence, and that it is the duty of appellants to avail themselves of the methods established by the rules for cutting the record down to matters relevant to the points raised on appeal.

Witkin in his article on *New California Rules on Appeal* in 17 Southern California Law Review has this to say (p. 124): "The cases plainly disclose the hazards under our former law of appealing on less than a complete record, particularly where only the judgment roll is brought up. Not only do the courts apply the normal presumption that any uncertainties are resolved in favor of the judgment and omitted matter is deemed adverse, but often the presumption is indulged that if something could have happened, which would support the judgment, it did happen. It was therefore absolutely necessary to protect the short record by giving it its face value; and there is both logical and practical justification for doing so, since it comes up by agreement or acquiescence of both parties, and augmentation is always possible."

Having in mind that under rule 26(a) a party who brings up matter not reasonably material to the determination of the

appeal is subject to penalty, and that if the old rules are to apply he will be met by the presumption that the portions of the proceedings he left below supports his opponent's position, the appellant will be "between the devil and the deep blue sea." With such a result the entire plan for shortening records on appeal is made useless by the reviewing courts' own rules.

█ *Rule 5(f)*, expressly providing for the *appeal on the judgment roll*, describes it as one in which "the appellant has designated only the papers and records constituting the judgment roll," and declares that in such case "the judgment roll shall constitute the record on appeal." Rule 52 applies its presumption where "a record on appeal does not contain all of the papers, records and oral proceedings." Thus the judgment roll is a *"record on appeal"* under both rules 5(f) and 52, and if it contains "only the papers and records constituting the judgment roll," it "does not contain all of the papers, records and oral proceedings," and therefore is within the terms of rule 52. In other words, it makes no difference whether the record contains 50 per cent of the proceedings, or 1 per cent of the proceedings, or the 10 per cent or 20 per cent constituting the papers and records, and not the 90 per cent or 80 per cent containing the testimony—in all those cases there is something less than a complete record, i. e., the record does not contain "all of the papers, records and oral proceedings."

In addition to its express language, exactly the same purpose of rule 52 is involved in its application to an appeal on the judgment roll. An appellant presents a question of law, contending that, on the face of the pleadings and findings, the judgment is wrong as a matter of law. Of course, while it is always possible that evidence was introduced *outside* the issues made by the pleadings, without objection, or to support a finding that otherwise has no support, as in the case at bar, such appellant contends that no such evidence was introduced. He therefore avoids the useless expense to himself, and the burden on the appellate court, of bringing up a complete transcript. If the respondent knows or the court has reason to believe that such evidence was introduced, rule 12 allows either to augment the record by having it transcribed; and rule 5(f) (the judgment roll appeal rule) makes this doubly clear by expressly protecting the right of the respondent: ". . . on motion of the respondent the reviewing

court may allow augmentation of the record whenever it is necessary to prevent a miscarriage of justice.''

The annotations to the rules pamphlet, on the provision for judgment roll appeals, read as follows: ''New. Cross-references: C. C. P. 670, Prob. C. 1242, C. C. P. 1134, 1139, what constitutes judgment roll; Rule 12(a), augmentation of record; *Rule 52, presumption where record not complete.* This rule recognizes the existing practice of an appeal on the judgment roll alone. Ordinarily the respondent cannot demand a reporter's transcript, but if he desires to bring up evidence to justify additional findings on appeal, or to show that error in ruling on pleadings was cured at the trial, or for some other proper purpose, he may move to augment the record (see Rule 12(a)).''

Commenting on the reasons which led to the formulation of rule 5(f), the draftsman observes (17 So.Cal.L.Rev. 111): ''The appellant may limit his grounds of appeal to matters appearing on the face of the judgment roll, and if he does so the evidence usually would contribute nothing relevant. There are, however, certain special situations in which the evidence would be material, *e. g.*, to justify additional findings on appeal, thereby eliminating inconsistency between findings and judgment, or to show that an erroneous ruling in connection with the pleadings was cured at the trial. Under our former law, except where the appellate fact-finding power was invoked, there was no need for the respondent to bring up any evidence, for the presumptions against the appellant on a judgment roll appeal were a sufficient protection. But Rule 52 does away with the arbitrary presumptions and it is now essential that the respondent be permitted to show what actually occurred.''

It has been suggested that judgment roll appeals were not intended to be included under rule 52 for the reason that no absolute right is given respondent to augment the record where he feels additional matter should be brought up. ■ Rule 5(f) does not give him the right to augment on a judgment roll appeal, but provides that on motion the court ''may'' permit augmentation. It is true that in one type of short appeal, to wit, agreed statement, respondent has an absolute right to require the inclusion of any matter in the statement. However, in the case of a settled statement, this right is subject to the approval of the court in settling the statement. In appeals on a partial transcript his right to augment is only permissive, for under rule 12 in order to augment respondent must apply to the reviewing court, which

"on such terms as it deems proper, *may* order" the augmentation requested. (Emphasis added.) In any event, the fact that the reviewing court under rule 5(f) requires an application to be made to it before a reporter's transcript can be prepared, is consistent with the declared purpose of the rule that, when the points involved can be raised on the judgment roll alone, the court retains such control as is necessary to see that the respondent does not convert it into an unnecessary full record appeal. It cannot be assumed that the court, where its attention is called by respondent to the fact that there are matters in the court below which should be considered on the appeal, would deny respondent the right to augment. Such a denial would be a clear abuse of discretion.

Norman S. Sterry, chairman, State Bar Committee on Rules on Appeal, states (vol. 18, State Bar Journal (1943) p. 142) : "Rule 5(f) provides, where the appellant has designated only the judgment roll and has not asked for a reporter's transcript, that the judgment roll shall constitute the record on appeal, provided, however, that on motion of the respondent the reviewing court may allow an augmentation of the record.

"The reason for this rule : Where an appeal is taken from a judgment roll alone, the oral proceedings are ordinarily not germane. On such an appeal an appellant can attack only defects which are inherent in the judgment and cannot ordinarily be cured by evidence. However, under rule 52 it will be presumed that a record that is stipulated or is certified as correct presents all the matters sufficient for a determination of the points raised by the appellant, and there may be cases where the appellant could designate a judgment roll and also by designation have included affidavits or exhibits that would apparently contradict recitals of the judgment or the findings of fact, if any. Hence, the necessity for giving the respondent the right to ask the reviewing court for an augmentation of the record, wherever the errors appearing on the face of the judgment roll are such that they could be, and respondent believes were, cured by the course or conduct of the trial. It was not thought wise, however, on a judgment roll appeal to give the respondent the absolute right to have the oral proceedings brought up and that he was entirely safeguarded by giving him a right to apply to the reviewing court."

The application of rule 52 in judgment roll appeals is a

necessary concomitant of the modernizing and streamlining of short record appeals, including those on the judgment roll. This rule fully protects a respondent in that, if it is necessary to justify a finding that evidence be brought up, and there is such evidence, respondent can do so. On the other hand, appellant in making a short record appeal, cannot justly be penalized by a presumption which may actually be contrary to the true situation.

The case at bar is a good example. At the oral argument the question arose as to whether or not there was evidence taken in the court below upon the question of whether the rental payable by the Army and set forth in respondent's lease was ''net rental'' or ''gross rental.'' This court thereupon made an order that if the respondent within five days would write the court a letter stating that it desired the testimony written and brought up, this court would order the same at the expense of the appellants with the understanding, however, that in the event the transcript when brought up failed to disclose any evidence upon this particular subject the court would order respondent to reimburse appellants for the cost of such transcript. The court did this under rule 26(a): ''In any case in which the interests of justice require it, the reviewing court may make any award or apportionment of costs which it deems proper.'' This court felt that in applying rule 52 to a judgment roll appeal there is one contingency in which it might work a hardship. If an appellant desired to avoid the initial expense of the reporter's transcript, he could appeal on the judgment roll alone, even though he knew there were matters introduced at the trial which would support the findings, and thereby throw the initial expense (not, of course, the ultimate cost) of converting the appeal into a full record appeal on the respondent. While, of course, there is no such situation here, this court felt that as rule 52 was being applied for the first time to a judgment roll appeal, it was only fair that appellants who had appealed on the judgment roll alone should pay for the transcript in the event that there was evidence that would support the findings, and also that such an application of rule 52 would tend to prevent in the future any judgment roll appeals that were not in good faith. Within the allotted five days, respondent wrote this court to the effect that it did not care to bring up any additional matters and would stand on the judgment roll alone. Thus, it would appear that if we were to apply the old presumption which in this

case would be that there was testimony to the effect that the parties intended "rentals" to mean "net" and not "gross" rentals (the ordinary acceptance and meaning of the word), we would be presuming something which by the admission of respondent is actually contrary to the fact. Thus, we have a striking illustration of the unfairness of the old method and the fairness of the new.

If we apply rule 5(f) to the situation in this case it necessarily follows that rule 52 must apply in judgment roll appeals. Here, if the old presumptions apply, respondent under no conditions would desire to augment the record. The presumptions are stronger than any evidence he could bring up, provided evidence had been received. But rule 5(f) says, "provided, however, that on motion of the respondent the reviewing court may allow augmentation of the record whenever it is necessary to prevent a miscarriage of justice." Now, if the old presumption still exists, what situation could there be in this type of appeal where augmentation of the record would be necessary to prevent a miscarriage of justice? Rather is it true in this case that there would be a miscarriage of justice, if the old presumption were applied. The court would presume that there was evidence below, which actually did not exist.

Respondent contends that rule 52 was never intended to apply to judgment roll appeals, and secondly, that if it was so intended, the Judicial Council had no power to set aside presumptions which have been in effect in California for over ninety years and which they claim are rules of substantive law. But these presumptions are not matters of substantive law; they are merely rules of convenience which the courts have established regulating the manner in which the record on appeal should be considered. They are adjective or procedural law. Black's Law Dictionary defines adjective law as "The aggregate of rules of procedure or practice. As opposed to that body of law which the courts are established to administer, (called 'substantive law,') it means the rules according to which the substantive law is administered." These presumptions are purely procedural, were made by the courts, and can be changed by the courts.

The Rules on Appeal cannot themselves, unaided by construction, accomplish their declared objectives. The courts must make them effective by a liberal and sympathetic interpretation. On this point, the statement of Chief Justice Gibson in 15 State Bar Journal, 332, is apropos: "My princi-

pal thought on the subject is this: Conferring the power to make rules of procedure upon the Judicial Council or upon the Supreme Court would, *without more,* be an impressive but completely futile gesture. A mere *transfer* of the power from the Legislature to the Judicial Council would be a vain attempt at reform, predestined to certain failure. *Adequate machinery* to make the power effective is the vital and basic element of any successful reform. Without this, we would be simply substituting a group of persons already overburdened with judicial problems in place of a group of persons equally busy with legislative problems. Not only would nothing be gained, but the whole program would be jeopardized, if the momentum for reform which now exists is dissipated by the adoption of a system no better than the old.''

Witkin has this to say, referring to rule 52 (17 So.Cal. L.Rev. 123): ''This is *new.* There is practically no precedent for it, and its scope and effect are yet to be determined. But a question immediately arises as to its validity. May such a rule be promulgated by the Judicial Council under a grant of authority over matters of procedure? It has been suggested that the subject involved is the appellate court's review power, which cannot be decreased by a procedural rule; and that Article VI, Section 4½ of the Constitution makes it the duty of the court to examine the *entire record* before reversing a judgment. There was some feeling, therefore, that the rule was either invalid or inappropriate and should be omitted.

''This position became untenable when the provisions of Part II providing for short records (judgment roll, partial transcript, agreed statement and settled statement) were approved. The cases plainly disclose the hazards under our former law of appealing on less than a complete record, particularly where only the judgment roll is brought up. Not only do the courts apply the normal presumption that any uncertainties are resolved in favor of the judgment and omitted matter is deemed adverse, but often the presumption is indulged that if something could have happened, which would support the judgment, it did happen. It was therefore absolutely necessary to protect the short record by giving it its face value; and there is both logical and practical justification for doing so, since it comes up by agreement or acquiesecence of both parties, and augmentation is always possible.

''Viewing the presumption in this light, Rule 52 does not

encroach upon the appellate court's power of review, but merely supplements the various rules dealing with the different types of short records. It says nothing about the manner in which the court is to consider the evidence, or the weight it may give it, nor does it even hint that the court must decide the case on less than the entire record. By stating the presumption that the relevant matters have come up, the rule simply does away with presumptions as to omitted matters, and requires that the court rely upon the *actual record*. If the court is not satisfied with a short record, or desires further light on any point, it may invoke the augmentation rule on its own motion, ordering up as much additional record as it desires, and may then proceed to decide the case on the actual, augmented record.

"There remains the question whether the rule conflicts with the constitutional doctrine of reversible error. Here it would seem sufficient to say that the phrase 'entire cause including the evidence,' in Article VI, Section $4\frac{1}{2}$, need not be given the arbitrary meaning of everything that took place in the lower court. The reviewing court never can know what happened below except through the record, which consists of what is brought up by the parties in accordance with the procedure prescribed by statute or rule. Even under our former statutes and rules some matters were frequently omitted, so that the record did not include all the proceedings. It would seem, then, that the constitution can be interpreted in accordance with its admitted objective, namely, to prohibit reversals for error where the record shows no miscarriage of justice; but the function of the reviewing court is performed when it examines the entire record before the court, to determine whether the error, in the light of the evidence brought up, is prejudicial. The court may and should rely on the parties to prepare a record which contains all that is relevant and material to the issue as to which error is urged."

When the reason changes, the rule changes. As heretofore shown, the old presumptions are incompatible with the new rule and the reasons for it. It is practically impossible to have short record appeals without changing the presumptions applicable to them.

This is really not changing the presumption at all. It is establishing a new method of handling the record on appeal by which the parties are told that if they desire to shorten the record and speed up the appeal, it will be considered that

all matters necessary to the determination of the appeal have been brought up. If that is not in fact true, then the parties may clear up the situation by augmenting the record as hereinbefore pointed out.

It is true that since the new rules were adopted in 1943, and at the time appellants filed their brief herein, there had been no case in which rule 52 had been applied, and there were seven cases in which the old presumption was applied without mention of that rule. They are *Hoyt Heater Co.* v. *Hoyt*, 68 Cal.App.2d 523 [157 P.2d 657]; *Estate of Crawford*, 69 Cal.App.2d 607 [160 P.2d 64]; *Kompf* v. *Morrison*, 73 Cal.App.2d 284 [166 P.2d 350]; *Lucich* v. *Lucich*, 75 Cal.App.2d 890 [172 P.2d 73]; *Burns* v. *Brown*, 76 Cal.App. 2d 639 [173 P.2d 716]; *Hughes* v. *City of Torrance*, 77 Cal. App.2d 272 [175 P.2d 290]; *Transportation Guar. Co.* v. *Jellins, supra*, 29 Cal.2d 242. (Since the filing of the briefs this court applied rule 52 in the case of *People* v. *Hidalgo*, 78 Cal.App.2d 926 [179 P.2d 102]. It was not a judgment roll appeal.) However, an examination of the record in each of the above mentioned seven cases shows that the question of the application of rule 52 was not raised in the briefs. Of course, a point not discussed is not authority in any future case.

*Cuthbert Burrel Co.* v. *Shirley*, 64 Cal.App.2d 52, 53 [148 P.2d 85], was an appeal on the clerk's transcript alone, hence a judgment roll appeal. There the court assumed that rule 52 applies to judgment roll appeals, for it is said: ''The notice of appeal was filed April 16, 1943, and the record on appeal was filed June 17, 1943, so rules four to twelve, and rule 52 of the Rules on Appeal, do not apply to this case.''

Respondent contends that the attention of the Bar should have been called to the effect of rule 52. Aside from the great amount of publicity which accompanied the adoption of the rules, Mr. Sterry in his article before mentioned (18 State Bar Journal, p. 136) said: ''In my judgment, the most vital changes in the new rules are to be found in Part II, dealing with the record. Every attorney taking an appeal should study carefully Part II of the rules. In doing so, *he must constantly keep in mind Rule 52,* which is found under Part IV. This rule is misplaced and should be under Part II.'' (Emphasis added.)

The judgment appealed from is reversed.

Peters, P. J., and Ward, J., concurred.