[Civ. No. 10434. Third Dist. Feb. 20, 1963.]

HARRY HARVEY et al., Plaintiffs and Respondents, v. JAMES A. WHITE et al., Defendants and Appellants.

276

Wallner & Miller and Charles J. Miller for Defendants and Appellants.

Hoseit & Luther and Charles Luther for Plaintiffs and Respondents.

VAN DYKE, J.*—Herein defendants and cross-complainants in the trial court appeal from that portion of a judgment denying them relief on their cross-complaint. Although the judgment denied relief also to plaintiffs and cross-defendants, they do not appeal.

The complaint alleged the following: On July 24, 1959, plaintiffs and defendants entered into a written contract whereunder defendants sold their accounting, bookkeeping and tax service business to plaintiffs for a purchase price of $5,000 in cash, paid at the execution of the contract, and a further sum, not exceeding $5,500, payable solely out of the gross proceeds received by plaintiffs up to April 15, 1960, from the "tax practice." As evidencing this second and final payment, plaintiffs executed and delivered to defendants their promissory note for the maximum sum of $5,500, the note reciting that it was payable in accordance with the terms of the contract. The sale included good will, office records, work papers, correspondence and other documents; also the customer lists of the bookkeeping accounts and of the income tax service business. The sellers agreed not to engage in the practice of accounting, bookkeeping, or preparation of tax returns and not to solicit any of their old customers for five years within a 60-mile radius of Sacramento. For the income tax period from January 1, 1960, to April 15, 1960, the sellers agreed to work for the buyers. The sellers further agreed to introduce the buyers to their former patrons and to send out to their patrons an agreed form of letter advising them of what was described in the letter as a merger of the two tax businesses. The complaint charged that beginning September 1, 1959, and continuing up to the time plaintiffs filed their complaint, the defendants in breach of the agreement engaged in the practice of accounting and

*Retired Presiding Justice of the District Court of Appeal sitting pro tempore under assignment by the Chairman of the Judicial Council.

bookkeeping and kept books for clients in the Sacramento area and within the proscribed limits; that commencing about the same time and continuing to the filing of the complaint the defendants in breach of the agreement refused to go with plaintiffs to the accounting clients and introduce the plaintiffs to them; that beginning about August 1, 1959, the defendants called upon and attempted to divert the business of their former patrons from plaintiffs to themselves, all within the proscribed limits; that commencing about January 15, 1960, and continuing to the time of filing the complaint, the defendants had violated the agreement by engaging in the practice of taxation service and in the business of preparing income tax returns for businesses and for individuals within the proscribed limits; and that for work so done they had received pay which they had not turned over to plaintiffs. It was further alleged that the defendants threatened to and would continue their violations of the covenants not to compete, and that despite frequent demands that they cease their violations defendants refused to conform to the agreement. Finally, it was alleged that by reason of these alleged violations of the agreement plaintiffs had suffered great damage and would continue to suffer damage in the future; and that these damages had already amounted to the sum of $5,500 "at least." The prayer of the complaint was for injunctive relief, restraining the defendants from violating the agreement, and for damages in the sum of $5,500, plus such further amount as might have been sustained by plaintiffs according to the proofs to be made, and for attorneys' fees as by contract provided.

Defendants answered generally denying that they had violated the agreement. They cross-complained alleging that the promissory note was due and unpaid and asked judgment for the principal thereof, plus interest and attorneys' fees.

The parties joined in a pretrial statement that the plaintiffs' action was for breach of contract, for damages and injunction, and that defendants had cross-complained on a promissory note; that plaintiffs had purchased an accounting business from defendants for which they paid down a sum in cash and gave their promissory note for the unpaid balance of the purchase price; that the plaintiffs claimed the defendants had breached their covenant not to compete and plaintiffs had been damaged by that breach; and that defendants denied they had breached the agreement and had cross-complained for the sum due on the promissory note. The

issues to be tried were stated to be breach of contract by defendants, breach of contract by plaintiffs, damages and right to injunction, attorneys' fees and costs to prevailing party.

After a trial findings of fact were filed which may be summarized as follows: Defendants sold an accounting and tax service business to plaintiffs for which plaintiffs paid $5,000 down and gave their promissory note for the balance of the purchase price in the amount of $5,500, payable on April 15, 1960, it being understood, however, that the note was payable only out of the gross proceeds produced by the "tax practice." Defendants agreed not to engage in the practice of accounting, bookkeeping or the preparation of tax returns within a radius of 60 miles of Sacramento for five years, an exception to which covenant was a provision that they must work for the plaintiffs during the 1960 income tax preparation. Defendants pursuant to the agreement introduced Mr. Harvey to most of the bookkeeping accounts and worked diligently and faithfully preparing tax returns from January 1, 1960, to April 15, 1960, the proceeds from which were remitted to the plaintiffs in an amount which exceeded $4,000. Defendants performed some tax work, the proceeds of which were not remitted to plaintiffs, but their defaults in this respect were innocent and not substantial. On April 19, 1960, defendants had substantially performed according to the terms of the agreement, but plaintiffs failed and refused to make the April payment pursuant to the promissory note. The allegations in plaintiffs' complaint that they themselves had performed all the conditions, terms and provisions on their part to be performed were not true, and the allegations in the complaint charging violations of the agreement by defendants dating back to August 1, 1959, were not true. Plaintiffs were in default on the contract and continued in default continuously until the time the findings were made. Several months after plaintiffs' default defendants began to compete with plaintiffs by actively seeking to regain the tax service business which they had sold but were compelled to take this action by economic necessity. As conclusions of law from the foregoing findings of fact, the court declared that there was a contract between the parties; that the plaintiffs breached the contract without any legal excuse; that thereafter the defendants also breached the contract without legal excuse; and that judgment would therefore be for the defendants on the complaint and for the cross-defendants on

the cross complaint, neither party to recover costs nor attorneys' fees.

This appeal is on the judgment roll, and we must therefore presume that the judgment roll contains everything that was before the trial court upon the issues and includes all matters material to a determination of the points on appeal. (Cal. Rules of Court, rule 52*; *Alkus* v. *Johnson-Pacific Co.*, 80 Cal.App.2d 1 [181 P.2d 72]; *Kovacik* v. *Reed*, 49 Cal.2d 166 [315 P.2d 314]; 3 Witkin, California Procedure, p. 2241 et seq.) An amendment adopted in 1951 to rule 52 provided: "On an appeal on the judgment roll alone . . . the foregoing presumption shall not apply unless the error claimed by appellant appears on the face of the record." Says Witkin at page 2243: ". . . Thus, the error must be of the type which is disclosed by the pleadings, findings, judgment and other papers constituting the judgment roll."

The following appears of record: Appellants sold a going business to respondents. They received a down payment of $5,000 and the promise of the buyers that on April 15th of the year following the buyers would pay an additional sum measured by the gross receipts from the business sold and accruing up to April 15th, but not exceeding $5,500. The sellers agreed to work for the buyers during the period from January 1st to April 15th, which they did. As of April 15th therefore, the buyers became obligated to pay the money so received, not exceeding the maximum of $5,500. The sum so received exceeded $4,000. Although the trial court did not find the exact sum so received, it did find that it exceeded $4,000 and therefore it found that on April 15th a sum in excess of $4,000 became due and payable to the sellers. The finding was that up to that time, that is, April 15th, the sellers had substantially performed their obligations under the selling agreement. Although this is not a finding of complete performance, it is nevertheless a finding that the contract price became due and payable, less offsets for any amount by which the difference between substantial performance and complete performance might have injured the buyers.

One who has substantially performed is not to be defeated of recovery for the agreed price because in minor details he has not completely performed. The law applicable is well stated in Corbin on Contracts, section 709:

---

*Formerly Rules on Appeal, rule 52.

██ "There seems to be some variation and doubt as to the burden and method of proving the amount to which the plaintiff is entitled in the case of merely 'substantial performance.' This is a case in which both parties are in the wrong; but the defendant is in the greater wrong. Both are guilty of a breach; but one is a little breach and the other is a large breach. The plaintiff has failed to perform in minor details and must make compensation therefor. Yet, the defendant is not justified in refusing payment; and he must make compensation for this greater wrong. Having completed substantial performance on his own part, the plaintiff is entitled to its agreed equivalent or price, according to the contract, with incidental damages for the defendant's delay in paying. The defendant, however, is not asking for payment for a performance rendered; he asks damages for nonperformance. The plaintiff's position is such that at common law he could maintain an action of debt, or indebitatus assumpsit, for the agreed price. The defendant, on the other hand, would be restricted to an action of express assumpsit for unliquidated damages.

"Because of the existence of this claim and counterclaim, it is generally stated as the rule of recovery that the contractor has a right to the contract price, less compensatory damages for the injury caused by his breach. . . ."

This right to recover for substantial performance, less such damages as may have been suffered for minor failure to perform, as stated in Corbin, is the law in California. ██ We quote from 12 California Jurisprudence 2d, Contracts, at page 443, as follows:

"The common-law rule which required full performance in strict accordance with a contract before recovery could be had has been relaxed. ██ It is settled, especially in the case of building contracts where one party is enjoying the fruits of a contractor's work, that if there has been a substantial performance in good faith, if the failure to make full performance can be compensated in damages, and if the omissions and deviations were not wilful or fraudulent and do not substantially affect the usefulness of the work for the purposes for which it was intended, the performing party may, in an action on the contract, recover the amount unpaid on the contract price, less the amount allowed as damages for the failure in strict performance. Substantial justice is provided by this course of procedure and no property right is violated. While this principle, which is sometimes spoken

of as the modern equitable doctrine of substantial perform-
ance, is applied most frequently in building and construction
contracts, a substantial compliance meets the requirements of
any obligation. . . ."

It is clear from the face of the record presented to this
court on appeal that this rule of recovery for substantial per-
formance, less proven damage for failure to completely per-
form, is applicable here. The findings are that the sellers
(appellants) did substantially perform those obligations
which they were required to perform in order to have paid
to them on April 15, 1960, the sums which had been received,
or were receivable, by the respondents up to April 15th. The
court found that these sums exceeded $4,000. The findings
therefore are that as of April 15, 1960, and in payment of the
full purchase price required under the contract, respondents
were indebted to appellants in a sum exceeding $4,000, which
sum they, at that time, refused to pay. On the contrary, and
on April 19th following, they brought this action asserting
breaches, which the court found had not occurred, and dam-
ages, which the court found they had not suffered, as offsetting
their indebtedness to appellants. The court properly found
they were in default and continued to be so up to and includ-
ing the time judgment was rendered after the findings of
fact were made and the conclusions of law were drawn. Such
was the situation when the pleadings were settled and the case
was ready for trial on the basis of the pleadings and the pre-
trial statements of counsel for both sides as to what issues
were to be tried. After trial the findings were that appellants
had violated not those obligations which gave rise to the
obligation of respondents to pay the full purchase price, less
such damages as a failure to completely perform might have
caused, but that appellants had violated the covenant not to
compete. The court found that the appellants did violate
that covenant, but that their violation was due to "economic
necessity." There is considerable discussion in the briefs as
to the meaning of this finding of "economic necessity" and
as to whether or not it constituted an excuse for appellants'
violation of the covenant not to compete. We are not here
concerned with that matter for if, and without legal excuse,
this covenant was violated by appellants, the violation afford-
ed no reason why they should forfeit their right to recover
a sum found to be owing to them in excess of $4,000. If
without excuse appellants violated the covenant not to com-
pete, respondents were entitled to the injunction they sued

for and were further entitled to such damages as they might have suffered by reason of that violation. The most that can be said for the right of respondents in this regard is that they were entitled in addition to injunctive relief to a finding as to the damages actually suffered by them and to an order offsetting such amount as was so found against the amount which they owed to the appellants. But the judgment entered purported to set one cause off against the other and therefore to decree that neither party should recover from the other, this without determining that one loss could equate the other. On the situation presented by the findings it was incumbent upon the trial court to proceed further, to find the amount owing upon the purchase price, to find the damages suffered by the breach of the covenant not to compete, and to enter judgment accordingly.

Although respondents have not appealed from that portion of the judgment rendered against them upon their complaint adjudging that they recover nothing against the appellants, and although we must reverse the portion of the judgment appealed from, that is, that portion thereof which denied any relief to appellants upon their cross-complaint, nevertheless, in furtherance of justice, we deem it proper that the cause be remanded to the trial court for the purpose of ascertaining the amount due appellants as of April 15, 1960; to further determine to what extent respondents were damaged by reason of appellants' violation of the covenant not to compete; and to render judgment in accordance with these findings. We so order because this is a case where the portion of a judgment adverse to a nonappealing party is so interwoven with the whole that appeal from a part affects the other parts, in which case an appellate court, in furtherance of justice, may reverse the entire judgment. (*Blache* v. *Blache*, 37 Cal.2d 531 [233 P.2d 547].)

Judgment is reversed and the cause remanded.

Schottky, Acting P. J., and Friedman, J., concurred.